Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JEANNE MARIE FARNEN,                           )                  No. 08-05-00143-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                 County Court at Law No. 3
)
THE STATE OF TEXAS,                                   )                  of Collin County, Texas
)
                                    Appellee.                          )                  (TC# 003-85949-03)

O P I N I O N

            Jeanne Marie Farnen appeals her conviction of driving while intoxicated. A jury found her
guilty and the court assessed punishment at a fine of $600 and confinement for ninety days. The
court suspended the sentence and placed Appellant on community supervision for twelve months. 
Finding the evidence sufficient to support the conviction, we affirm.
FACTUAL SUMMARY
            On October 3, 2003 at around 7 p.m., Aly Hajee was driving home after a work-related event
at the state fair. As he entered an intersection, he saw a red Camaro attempt to turn left without
yielding the right-of-way to him. Hajee slammed on the brakes but was unable to avoid colliding
head-on with the Camaro. The red Camaro was driven by Appellant, who was alone in the car. 
After stopping in the intersection for a short time, Appellant moved her car onto an adjacent street. 
Hajee saw that the accident had caused minor damage and he moved his vehicle out of the
intersection. He stopped near Appellant’s vehicle to exchange insurance and personal information. 
 He did not see anyone in the Camaro other than Appellant but her sister appeared at the scene and
told Hajee that she had witnessed the accident. During their conversation, Hajee smelled alcohol on
Appellant’s breath. When Appellant claimed that she had a green arrow and the right-of-way, he
decided to call the police because he was “100 percent sure” that he had the green light. Hajee
estimated that about fifteen minutes elapsed between the time of the accident and when he called the
police. When a Plano police officer arrived at the scene, Hajee talked to her and gave a written
statement regarding what had happened. Although Hajee identified Appellant as the driver of the
Camaro during his testimony, he could not make a positive in-court identification. He only recalled
that the driver had long dark hair. 
            Renee Glasser, a Plano police officer, arrived at the accident scene at 7:15 p.m. She saw a
red Camaro and a green Volvo parked in the right lane. Glasser first spoke with Hajee who
identified Appellant as the driver of the Camaro. When Glasser first arrived, Appellant was seated
in the passenger seat looking in the glove box for her insurance card. Appellant told Glasser that she
was the driver of the Camaro. Glasser could smell an odor of alcohol on Appellant’s person and
asked if she had been drinking. At first, Appellant denied drinking at all and handed Glasser a bottle
of water from the car. When Glasser told Appellant that she could smell alcohol, Appellant admitted
that she’d had two margaritas while drinking at the Blue Goose with her sisters. At this point,
Glasser administered field sobriety tests. 
            Glasser first administered the horizontal gaze nystagmus test. Appellant had a lack of smooth
pursuit and onset of nystagmus prior to maximum deviation in both eyes indicating intoxication. 
Although the results indicated that Appellant was too intoxicated to be driving, Glasser continued
with the other tests. Glasser next had Appellant perform the one-leg stand. Appellant raised her
arms for balance and put her foot down before completing the test. These results also indicated to
Glasser that Appellant was intoxicated. Finally, Glasser asked Appellant to walk heel-to-toe in a
straight line. Appellant could not maintain her balance and used a nearby wall for support. She also
stepped off the line. Based on her observations and experience, Glasser concluded that Appellant
had lost the normal use of her mental and physical faculties due to the introduction of alcohol into
her body. She arrested Appellant for driving while intoxicated and transported her to the Plano city
jail. 
            Once at the jail, Glasser gave Appellant a copy of the DWI statutory warning and began
reading the warning aloud to her while Appellant read along on her copy. Approximately halfway
through the warning, Appellant realized that her copy of the warning was upside down and she
turned it around. Appellant agreed to submit to a breath test. The first test was invalid and did not
record a result because the samples were too far apart. Appellant consented to submit a second
sample and that test was administered at 8:50 p.m., approximately one hour and fifty minutes after
the accident. The results were .152 and .155. 
            Alvin Finkley, the technical supervisor responsible for maintenance and repair of the
intoxilyzer devices in the area, testified that the particular device used in this case was functioning
properly at the time the test was administered. Based on the test results, Finkley was of the opinion
that Appellant was intoxicated at the time of the test. Finkley also applied retrograde extrapolation
to the test results and other relevant factors and concluded that Appellant would have had alcohol
in her system two hours before the test. 
            The information alleged both definitions of intoxication (loss of normal use and blood
alcohol concentration greater than .08) but the trial court submitted only the loss of normal use
definition to the jury. 
SUFFICIENCY OF THE EVIDENCE
            By four points of error, Appellant challenges the legal and factual sufficiency of the evidence
to support her conviction.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). We do not resolve any
conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do
so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the
standard of review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d
at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), the Court of Criminal Appeals clarified the
factual sufficiency standard and linked the appellate standard of review to the beyond a reasonable
doubt burden of proof. There is only one question to be answered in a factual sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt? Zuniga, 144 S.W.3d at 484. However, there are two ways in which the
evidence may be insufficient. Id. First, when considered by itself, evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. 
Id. at 485. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Id.
Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be factually
insufficient under a beyond-a-reasonable-doubt standard. Id. In performing this review, we are to
give due deference to the jury verdict, as well as to determinations involving the credibility and
demeanor of witnesses. Zuniga, 144 S.W.3d at 481.
Elements of Driving While Intoxicated
            A person commits driving while intoxicated if the person is intoxicated while operating a
motor vehicle in a public place. Tex.Penal Code Ann. § 49.04(a)(Vernon 2003). Intoxication is
established by proof of either a blood alcohol concentration greater than .08 or the loss of normal use
of mental and physical faculties due to the introduction of alcohol into the body. See Tex.Penal
Code Ann. §49.01(2)(A), (B). The trial court limited the jury’s consideration of the evidence to loss
of normal use.
IDENTIFICATION
            In Point of Error One, Appellant complains that the State failed to prove by legally sufficient
evidence that she operated the Camaro found at the scene of the accident. In Point of Error Four,
she challenges the factual sufficiency of the evidence to prove this same element. Included in these
arguments is Appellant’s contention that since none of the witnesses specifically identified her at
trial, they may have been referring to someone else in the courtroom. 
            Although Hajee testified that his vehicle collided with a car driven by “Ms. Farnen,” he
admitted that his only independent recollection of her appearance was that she had long dark hair. 
He was not asked to and did not make an in-court identification of Appellant. Officer Glasser
testified on the first day of trial that Hajee identified “Ms. Farnen” as the driver of the Camaro. 
Glasser approached Ms. Farnen and obtained her driver’s license. Ms. Farnen admitting to Glasser
that she was the driver. The following exchange occurred during Glasser’s in-court identification
of Appellant:
 
[Prosecutor]: Is that person that you’re talking to, that you’ve identified as the driver
of the red Camaro, that you’ve identified as Ms. Farnen, do you recognize that
individual in the courtroom today?
 
[Glasser]: Yes. She’s wearing the red shirt with a black jacket.
 
[Prosecutor]: And with regards to my location, if we move from, I guess, your left,
Mr. McKnight being one number and Mr. Mulder number three, where would she
would [sic] be sitting?
 
[Glasser]: She would be the number four seat.
 
[Prosecutor]: And this was the same individual that Mr. Hajee pointed out to you at
the scene?
 
[Glasser]: Yes. 

Appellant’s counsel did not object to this identification procedure.
            On the second day of trial, Officer Eric Granhold testified that he administered the intoxilyzer
breath test to “Jeanne Farnen” on October 3, 2003. When asked by the prosecutor whether he saw
the same person in the courtroom, Granhold answered, “Yes, sir” and identified her as “wearing a
pink color jacket.” Granhold described her as sitting “over here at the table at the left.” Once again,
Appellant’s counsel did not object to this identification procedure. The trial court admitted a
videotape made at the scene (State’s Exhibit 1) and a videotape made at the jail (State’s Exhibit 2). 
State’s Exhibit 2 depicts Officer Glasser looking at what appears to be a driver’s license and
addressing the defendant as “Ms. Farnen.” The jury had the opportunity to view the perpetrator of
the offense at the scene and subsequent to her arrest and to compare her appearance to Appellant.
            To the extent Appellant complains that the witnesses pointed out some other person at trial,
it was incumbent upon her to object to the identification procedure to preserve the issue for review. 
Her failure to object waived any complaint about possible confusion or misidentification. See
Rohlfing v. State, 612 S.W.2d 598, 601 (Tex.Crim.App. 1981). 
            In reviewing the sufficiency of an in-court identification, the test is whether we can conclude
from a totality of the circumstances the jury was adequately apprised that the witnesses were
referring to the defendant as the perpetrator of the offense. Rohlfing v. State, 612 S.W.2d 598, 601
(Tex.Crim.App. 1981). The information charged “Jeanne Marie Farnen” with driving while
intoxicated. When arraigned, Appellant entered a plea of not guilty to the charge. All of the State’s
witnesses referred to the perpetrator of the offense as “Ms. Farnen” and both Glasser and Granhold
identified her in the courtroom by pointing out where she sat and by an article of clothing. The jury
viewed both videotapes. State’s Exhibit 3 and State’s Exhibit 4, the intoxilyer results, identify the
“subject” of the test as “Jeanne M. Farnen.” The jury charge identified the defendant as “Jeanne
Marie Farnen” and the jury found “the defendant guilty of driving while intoxicated, as charged in
the information.” Based upon a totality of the circumstances, we conclude that the evidence is
legally sufficient to identify Appellant as the perpetrator of the offense. See Rohlfing, 612 S.W.2d
at 601 (where witnesses identified defendant by pointing to him or by identifying particular item of
clothing he was wearing, defendant was sole person on trial, jury found defendant guilty as alleged
in the indictment, and the defendant did not object at trial to the in-court identification procedure as
being misleading to the jury, the evidence was sufficient to establish identification). Having
considered all of the evidence in a neutral light, we also find that it is factually sufficient to establish
that Appellant was the perpetrator of the DWI offense.


 Id.
            We next consider Appellant’s argument that the evidence is legally insufficient to prove that
she operated a motor vehicle. The State relies in part on Appellant’s statement to Officer Glasser
that she was the driver of the red Camaro. Appellant contends that the State failed to corroborate
her extrajudicial statement. Extrajudicial confessions alone are not sufficient to support a
conviction. Emery v. State, 881 S.W.2d 702, 705 (Tex.Crim.App. 1994); Purvis v. State, 4 S.W.3d
118, 121 (Tex.App.--Waco 1999, no pet.). A defendant’s extrajudicial confession must be
corroborated by other evidence tending to show that a crime has been committed. Williams v. State,
958 S.W.2d 186, 190 (Tex.Crim.App. 1997); Purvis, 4 S.W.3d at 121. The corroborating evidence,
however, need not be sufficient by itself to prove the offense; rather all that is required is that there
be some evidence which renders the commission of the offense more probable than it would be
without the evidence. Williams, 958 S.W.2d at 190; Purvis, 4 S.W.3d at 121. 
            Taken in the light most favorable to the verdict, the evidence corroborated Appellant’s
admission to Glasser that she was the driver of the vehicle. According to Hajee, the driver was alone 
in the Camaro. When Glasser arrived on the scene, Appellant was seated alone in the passenger seat
of the vehicle looking for her insurance card. Hajee told Glasser that Appellant was the driver of the
Camaro, and at trial, Glasser identified Appellant as the same person Hajee had identified as the
driver. We conclude that the evidence is legally sufficient to prove that Appellant drove the vehicle. 
See Lewis v. State, No. 2-02-341-CR, 2003 WL 23095980 (Tex.App.--Fort Worth Dec. 31, 2003,
no pet.)(not reported in S.W.3d)(evidence was sufficient to corroborate defendant’s extrajudicial
confession; witness, who was a passenger in vehicle into which defendant’s vehicle collided,
testified that no one other than defendant was in the vehicle and that the driver of that vehicle
remained on the scene until officers arrived, and officers testified that witness identified defendant
at the scene as the driver of vehicle).
            A neutral review of the evidence also leads to a conclusion that the evidence is sufficient to
corroborate Appellant’s extra-judicial admission that she was the driver. Although her sister
appeared at the scene of the accident, there was no evidence that she was in or drove Appellant’s car. 
We conclude that the evidence is factually sufficient to prove this element. Points of Error One and
Four are overruled.
 

DRIVING WHILE INTOXICATED
            In Point of Error Two, Appellant argues that the evidence is legally insufficient to prove that
she was intoxicated at the time she operated the vehicle. In Point of Error Three, she challenges the
factual sufficiency of the evidence to support the same element. As part of her argument, she
challenges the retrograde extrapolation evidence offered at trial. Although the State charged
Appellant under both the loss of normal use and per se definitions of intoxication, the trial court only
submitted the loss of normal use definition to the jury. We will first consider whether the State
proved beyond a reasonable doubt that Appellant had lost the normal use of her mental and physical
faculties at the time she drove. 
            Taken in the light most favorable to the verdict, the evidence established that Hajee noticed
the smell of alcohol on Appellant’s breath almost immediately after the accident. Appellant at first
denied drinking any alcoholic beverages, but finally admitted to Officer Glasser that after work and
before the accident she had been drinking margaritas with her sisters at a nearby establishment. 
Glasser, who arrived fifteen minutes after the accident occurred, also noticed the smell of alcohol
on Appellant’s breath during her initial conversation with Appellant. The field sobriety tests
indicated that Appellant was intoxicated. In Glasser’s opinion, Appellant had lost the normal use
of her mental and physical faculties due to the introduction of alcohol into her body.
            Pointing to a bottle containing clear liquid found in her car, Appellant suggests it is possible
that she drank after the accident, rather than before. But Appellant told Glasser that the bottle
contained water and there was no evidence that it contained an alcoholic beverage or that Appellant
drank from the bottle after the accident. Even if the evidence supported an inference that Appellant
drank after the accident, it would not render the evidence legally insufficient as it was the jury’s task
to choose between the competing inferences.


 The evidence is legally sufficient to establish beyond
a reasonable doubt that Appellant was intoxicated at the time she drove her vehicle. See Weaver v.
State, 721 S.W.2d 495, 498-99 (Tex.App.--Houston [1st Dist.] 1986, pet. ref’d)(evidence sufficient
to support DWI conviction where defendant admitting driving, officer arrived shortly after accident
and observed that defendant had odor of alcohol on his breath, and other testimony established that
defendant had been drinking prior to the accident).
            We have also considered the evidence in a neutral light. There is little or no evidence
permitting an inference that Appellant became intoxicated after the accident. Given Appellant’s
admission that she had been drinking margaritas with her sisters prior to the accident, the smell of
alcohol on her breath, and the evidence showing that she had lost the normal use of her mental and
physical faculties, we conclude that the evidence is factually sufficient to prove this element beyond
a reasonable doubt.
            Because the evidence is legally and factually sufficient to prove intoxication under the loss
of normal use definition, we need not consider Appellant’s contention regarding retrograde
extrapolation as it relates to the per se definition of intoxication. For this same reason, it is
unnecessary to address the State’s cross-point regarding the trial court’s refusal to charge the jury
on the per se definition of intoxication. We overrule Points of Error Two and Three and affirm the
judgment of the trial court.


April 27, 2006                                                             
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)