Turner v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-196-CR

     ERMA TURNER,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Court No. 2
Galveston County, Texas
Trial Court # 131,370
                                                                                                    

O P I N I O N
                                                                                                    

      Erma Turner was convicted of criminal mischief-Class B. See Tex. Penal Code Ann. §
28.03(a), (b)(2) (Vernon Supp. 1994). The court assessed punishment at one year's probation and
restitution of $225. Turner was accused of "keying"


 the trunk of Sandra Williams' car. Turner
appeals on three points. We will affirm the conviction. The State raises the issue that the sentence
is in excess of the 180 days permitted by the Penal Code and, in the interest of justice, asks that
the case be remanded for a new punishment hearing. See id. § 12.22 (Vernon Supp. 1994); Tex.
Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 1994). 
      In her first point, Turner complains that the court erred in permitting trial counsel to represent
her in violation of article 2.08 of the Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 2.08 (Vernon 1977). Article 2.08 provides:
District and county attorneys shall not be of counsel adversely to the State in any case, in any
court, nor shall they, after they cease to be such officers, be of counsel adversely to the State
in any case in which they have been of counsel for the State.
Id.
      At the beginning of Turner's trial, the witnesses were sworn, and the reading of the
indictment was waived. Turner's trial counsel then brought to the court's attention the fact that
she had previously been with the district attorney's office and had signed the information and
complaint that led to Turner's indictment.
Counsel:Uh, your Honor, we have a special case here where during the time when this
information was filed, I was employed in the district attorney's office. And in the regular
course of business, I, myself, signed the complaint and the information against Ms. Turner
here. However, I have spoken with Ms. Turner, and she has no reservations about me
continuing on the case in her defense, uh, if the Court would so allow.
 
      Court:  Is that true?
 
      Turner:       Yes.
 
      Court:  All right. And does the State have any objection?
 
      State:  The State has no objection, your Honor.
 
Court: As I understand it, refresh my memory, but the signing of the complaint or the
information is nothing but ministerial duties, is it not?
 
      Counsel:      That's correct, your Honor.
 
      Court:  Don't go into any of the facts except what's given to you.
 
Counsel:The facts were reviewed with another attorney in the district attorney's office,
and I filed the complaint, signed the complaint, based on his conversation and his, uh, advice.
 
      Court:       Okay. Well, everyone's happy.
      Turner argues on appeal that the court erred in failing to disqualify trial counsel despite the
lack of objection from Turner or the State. The State asserts that Turner waived any complaint. 
See id. art. 1.14(a) (Vernon Supp. 1994); Marin v. State, 851 S.W.2d 275 (Tex. Crim. App.
1993). We agree with the State. The logical purpose of article 2.08 is to prevent a prosecutor
from learning facts while in the employ of the State and then using that information adversely
against the State in representing the defendant. See Tex. Code Crim. Proc. Ann. art. 2.08. The
State had no objection to counsel's continued representation of Turner. Furthermore, Turner,
even when directly questioned by the court, had no objection to continuing with counsel. 
Assuming that she had standing, Turner waived any complaint. See Marin, 851 S.W.2d at 280. 
We overrule point one.
      In point two, Turner asserts that the evidence is insufficient to support the conviction in light
of the complaining witness' lack of credibility. Evidence will sustain a conviction if, viewing it
in the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim.
App. 1991). Review under the Jackson standard is the same whether the factfinder is the judge
or a jury. Matson, 819 S.W.2d at 843.
sandra williams
      Sandra Williams


 testified that she went to the the Cedar Terrace Housing Office in Galveston
around 9 a.m. on August 19, 1992. She had been separated from her husband, Emanuel "Rock"
Williams, for several years.


 Williams was attempting to verify Rock's address for the child
support division of the Attorney General's office. Williams testified that she saw Turner throwing
something at her car. Williams left the complex.
      Around 10 a.m., Williams spoke by telephone to Eric Temple, the manager of the complex. 
He asked her to come to his office. Williams went to the Galveston police department station and
asked Officer Brian Gately to accompany her to the complex and watch her car.


 Gately told her
he could not "secure" her car, but that the complex was in his district and he would watch the car
while she was in the manager's office. Temple was not in his office when Williams arrived. 
Gately circled the block while she waited. 
      Williams testified that she walked out of the manager's office and saw Turner scratching her
car—a red Chevrolet Cavalier—screaming, "Bitch, get your own man, bitch." Turner scratched
the trunk "back and forth" with an object in her hand. When Gately arrived back on the scene,
Turner was still "hollering profanity." Williams saw red on Turner's keys. Gately handcuffed
Turner, but released her when Williams told him she did not want to press charges. Within fifteen
minutes of the incident, however, Williams went to the district attorney's office and filed charges
against Turner.



brian gately
      Brian Gately, a Galveston police officer, testified that he arrived on the scene after a dispatch
call. He spoke with Williams, who asked him to "hang in the area" while she went inside the
manager's office. Gately was called away to go around the block on another matter. When he
returned, there was a "disturbance" in progress between Williams and Turner. Williams accused
Turner of "keying" her car. Gately observed some damage to Williams' car and asked to see
Turner's keys. He observed "red residue" on the tip of one of Turner's keys that "appeared to be
consistent with the paint of [Williams'] car." Gately did not recall Williams coming to the police
station and speaking to him before the incident, but testified that "it could have happened."
eric temple
      Eric Temple testified that he was the manager of the complex, that Williams came to his office
the morning of the incident to ask whether Turner and Rock lived there, and that he informed
Williams that he could not divulge the requested information. After Williams left Temple's office,
he heard a "disturbance" between Turner and Williams "about a car being scratched." Temple
observed scratches on the trunk of Williams' car. Temple heard an officer ask Turner for her
keys. The officer looked at the key and said, "Oh, it has paint on it."
defense witnesses
      The gist of Turner's defense was that Williams, angry that her husband was living with
Turner, was seeking retribution by falsely accusing Turner. "Rock" Williams testified that he was
separated from Williams and that he and Turner lived together. He testified that he and Williams
were not on good terms, that she had said she was "going to make life miserable" for him and
Turner, and that she would rather see him dead or in prison than with another woman. Rock said
that he had seen Williams at the complex many times "peeping around," that she had "jumped"
on Turner previously, and that he had "filed" on her before. He also accused her of having
previously filed false criminal charges against a former neighbor.
      Robin Bourgeois and Norris Rawls lived in the complex. Both testified that they had seen
Williams around the complex the morning of the incident. Bourgeois testified that Williams had
been asking questions about Turner. Rawls testified that Williams had taken down a license plate
number of a car and had then driven down the street to talk with a policeman.
      Turner argues that, because of inconsistencies in Williams' testimony, Williams' "truth and
veracity is lacking as a matter of law." However, she cites no direct authority to support that
statement. 
      The trier of fact is the sole judge of the weight and credibility of the witnesses and may
believe or disbelieve all or any part of any witness' testimony. Williams v. State, 692 S.W.2d
671, 676 (Tex. Crim. App. 1984). We do not resolve any conflict in fact or evaluate the
credibility of the witnesses. See Juarez v. State, 796 S.W.2d 523, 524 (Tex. App.—San Antonio
1990, pet. ref'd). Contradictory testimony does not render the evidence insufficient. Mercado
v. State, 695 S.W.2d 25, 29 (Tex. App.—Corpus Christi 1985), aff'd, 718 S.W.2d 291 (1986).
      Williams testified that she saw Turner scratch the trunk of her car with an object. Gately
testified that the tip of one of Turner's keys had red residue consistent with the red paint from
Williams' car. The court, as the sole judge of the credibility of the witnesses, apparently believed
Williams and Gately. See Williams, 692 S.W.2d at 676. Having viewed the evidence in the light
most favorable to the verdict, we find that any rational trier of fact could have found the essential
elements of criminal mischief beyond a reasonable doubt. See Matson, 819 S.W.2d at 843. We
overrule point two.
      In her third point, Turner complains that the evidence was insufficient to support her
conviction because the State failed to connect the repair estimate to the damages alleged. Criminal
mischief is a Class B misdemeanor if the damage to the property is over $20. Tex. Penal Code
Ann. § 28.03(b)(2). The pecuniary loss to damaged property is determined by the cost of
repairing or restoring the damaged property within a reasonable time after the damage occurred. 
Id. § 28.06(b) (Vernon 1989). 
      Turner argues that the State failed to prove the exact location, the size, or the exact number
of the scratches. We again must look at the evidence in the light most favorable to the verdict to
determine if any rational trier of fact could have found the elements of the crime beyond a
reasonable doubt. See Matson, 819 S.W.2d at 843. Williams testified that her car had been
scratched and the tires had been slashed on prior occasions. Each time, she had the car repaired
and the paint retouched. Williams saw Turner scratching the trunk of the car. Williams, Gately,
and Temple saw scratches on the trunk after the incident. Gately saw red residue on Turner's key. 
Williams testified that she had gotten two estimates to repair the damage—one for $225, one for
$272. Leo Rodriguez, owner of a paint and body shop, testified that repair to the trunk would cost
an estimated $225. He testified that there was a crack in the truck that was taken into
consideration in the estimate.
       Turner relies on Athey v. State, 697 S.W.2d 818 (Tex. App.—Dallas 1985, no pet.), for the
proposition that the State's evidence was insufficient. In Athey, the State was required to prove
that the damage to the cabinets, ceiling, and walls of a rental home exceeded $200. The court
found no evidence distinguishing the damage caused by the defendant's actions versus the repairs
required by the deteriorated condition of the property unrelated to the defendant's actions. Id. at
821. Here, the State had to prove that Turner's actions caused $20 or more in damage to
Williams' property. State's Exhibit No. 1, the written estimate from Rodriguez's paint and body
shop, shows the breakdown of costs to repair the trunk. Even if the estimate took into
consideration a crack unrelated to the criminal mischief, the paint job alone—without taking the
cost of labor into consideration—was estimated at $25. The written estimate is in addition to the
testimony of Rodriguez and Williams.
      We find that, viewing the evidence in the light most favorable to the verdict, the court could
have found damage of over $20 beyond a reasonable doubt. See Matson, 819 S.W.2d at 843. We
overrule point three.
      Finally, on its own initiative, the State points out that the court's sentence of one year,
probated, exceeds the maximum 180-day sentence permitted by the Penal Code. See Tex. Penal
Code Ann. § 12.22. The State requests, in the interest of justice, that the case be remanded for
a new punishment hearing. See Tex. Code Crim. Proc. Ann. art. 44.29(b). We agree with the
State and remand the cause for a new punishment hearing.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed April 27, 1994
Do not publish