NUMBER 13-06-285-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JESSIE VERNON JOCHIMS, Appellant,


v.



THE STATE OF TEXAS , Appellee.

 


On appeal from the 36th District Court of San Patricio County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 Appellant, Jessie Vernon Jochims, appeals his conviction for indecency with a
child. (1) The jury assessed punishment at five years' imprisonment. In two issues, appellant
contends (1) the trial court erred in admitting evidence of an extraneous offense, and (2)
the evidence presented at trial was factually insufficient to support his conviction. We
affirm.

Background

 In July of 2005, the Texas Department of Family and Protective Services received
a referral of an allegation of sexual abuse of a five-year-old child. When the department
investigator made contact with the family, the child, Z.G., made an outcry of sexual abuse
by her stepfather, appellant. Z.G. repeated her outcry statement to a sexual assault nurse
examiner and an interviewer at a child advocacy center.

Factual Sufficiency of the Evidence

 We first address appellant's second issue, which challenges the factual sufficiency
of the evidence to support his conviction for indecency with a child, indecency which was
said to have occurred against Z.G. in Ingleside, Texas. In a factual sufficiency review, we
view all the evidence in a neutral light to determine whether a jury was rationally justified
in finding guilt beyond a reasonable doubt. (2) We then determine whether the evidence
supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly
unjust or whether the great weight and preponderance of the evidence is contrary to the
verdict. (3)

 Section 21.11 of the Texas Penal Code provides that a person commits the offense
of indecency with a child if, with a child under 17 years and not the person's spouse, the
person engages in sexual contact with the child or causes the child to engage in sexual
contact. (4) "Sexual contact" is defined as "any touching by a person, including touching
through clothing, of the anus, breast, or any part of the genitals of a child" if the act is
committed "with the intent to arouse or gratify the sexual desire" of the person. (5) A jury may
infer the requisite intent from the defendant's conduct, remarks, or all the surrounding
circumstances. (6) 

 A child victim's testimony alone is sufficient to support a conviction for indecency
with a child by contact. (7) We do not require a child victim's description of the incident to be
precise, and she is not expected to express herself at the same level of sophistication as
an adult. (8) There is no requirement that the victim's testimony be corroborated by medical
or physical evidence. (9) Additionally, testimony regarding a child victim's outcry statement
can be sufficient to sustain a conviction for indecency with a child. (10)

 On July 14, 2005, Marilyn Kay Long, an investigator with the Texas Department of
Family and Protective Services, received a referral of an allegation involving Z.G., a five-year-old child, alleging sexual abuse of Z.G. by appellant. Long located and made contact
with the family the next day. Long informed Z.G.'s mother (hereinafter "the mother") of the
allegations and requested an interview with the child. Long told the mother that according
to Z.G., Z.G. had previously told her (the mother) that appellant had touched her private
places. Long testified that the mother admitted the outcry by Z.G., and that the mother
expressed disbelief toward the outcry.

 The mother allowed Long to interview the child privately in Z.G.'s bedroom. Long
testified that during the interview, Z.G made an outcry of sexual abuse by appellant. 
Specifically, Long stated that Z.G. told her she had been touched twice, once while living
in Ingleside and once when the family lived in an apartment in Portland. Long further
testified that Z.G. stated that her "daddy," referring to appellant, came and got in bed with
her and touched her with his "guts." (11) 

 Based on the outcry, Long advised the mother that she needed to take the child to
Driscoll Children's Hospital for a SANE exam. Long testified that the mother wanted to call
appellant and ask him to take herself and Z.G. to the hospital. Long advised her that, as
an actor for Child Protective Services, she could not allow appellant, the alleged
perpetrator, to take them to Driscoll Children's Hospital. Long drove them to the hospital
and stayed in the emergency waiting room until the child's examination had been
completed. Elizabeth Andelman, the Sexual Assault Nurse Examiner who performed the
examination on Z.G., testified that when she asked the child why she was there today, Z.G.
responded: "My dad, Jessie, touched my privates with his guts. He rubbed it up and down
from my butt to the top of my private. He did it twice at night. He whispered to me, 'It's just
a dream. Some dreams hurt.'" Furthermore, Andelman stated that Z.G. had indicated the
respective sexual organs when asked to point to them.

 Based upon her observations, Long believed the mother would not take steps to
protect Z.G. As a result, after the examination, Z.G. was placed with her maternal
grandmother. Long then contacted both the Ingleside Police Department and the Portland
Police Department due to the two separate incidents Z.G. stated had occurred. The
detectives requested for the child to be taken to the Nueces County Child Advocacy Center
to be interviewed. Long testified that after viewing the videotape of the recorded interview
with the child, Z.G. had been consistent in her statements about the sexual abuse and
never named anyone else as the perpetrator other than appellant.

 Z.G.'s mother testified that during late May or early June, she and Z.G. were alone
in the office or game room of their apartment in Portland when Z.G. asked, "Why does
daddy keep doing this?" When the mother responded with "What?", Z.G. said, "Putting his
guts down there." The mother also stated that when the child said "daddy," she was
referring to Jessie Jochims. The mother testified that she did not contact the police nor
C.P.S.

 When called upon to testify, Z.G. identified appellant as her "daddy." The child
admitted she was nervous and scared. When shown an anatomically correct girl doll, Z.G.
pointed to the doll's anus and called it the "butt." She also pointed to the groin area of the
doll and referred to it as a "private part." When shown an anatomically correct boy doll, the
child pointed to the groin area of the doll and identified it as a "private part." Z.G. also
stated her "dad" touched her "butt," her "private part," and that he touched her with his
"private part." At trial, Z.G. stated that this occurred in Portland. When asked if her daddy
ever touched her on her private part in Ingleside, the child responded, "No."

 Appellant complains that the evidence supporting the verdict was insufficient
because there was no physical evidence of the claims. This Court, however, has
previously held that there is no requirement that the victim's testimony be corroborated by
medical testimony or other physical evidence. (12) 

 Appellant also contends that the evidence was insufficient to convict him because,
at trial, Z.G. denied being touched by him in Ingleside. Z.G. testified that appellant touched
her butt, her private part, and that he touched her with his private part. When asked if this
occurred in Ingleside, Z.G. responded, "No." Appellant argues that this recantation,
together with the lack of physical evidence that he committed the offense, undermines the
proof of guilt such that it was factually insufficient to satisfy the beyond-a-reasonable-doubt
standard. 

 In situations involving a recanting witness, it is impossible to know with any
certainty which of the witness's statements is true. The jury, as the trier of fact, is the
exclusive judge of the facts and credibility of the witnesses and the weight to be given their
testimony. (13) The jury is entitled to accept or reject all or any portion of a witness's
testimony. (14) In other words, the jury is entitled to reconcile any conflicts in the testimony
and determine whether to believe the victim's original statement or the recantation. (15) 

 In Chambers v. State, a videotape entered into evidence showed a child victim
stating that appellant had engaged in sexual acts with her. (16) The child recanted the
statement upon being called by the defense to testify. (17) The court held that the victim's
recantation of her videotaped testimony did not destroy its probative value. (18) In the instant
case, the statements Z.G. recanted came in the form of outcry testimony, rather than a
videotape. Two witnesses, Z.G.'s mother and Long, testified that Z.G. spoke to them about
appellant putting his "guts" on her private parts on two different occasions, once in
Ingleside and once in Portland.

 The outcry testimony of a child victim is hearsay when it is offered for the truth of
the matter asserted. (19) However, outcry testimony admitted under article 38.072 of the code
of criminal procedure is admitted as an exception to the hearsay rule, meaning it is
considered substantive evidence, admissible for the truth of the matter asserted in the
testimony. (20) Because outcry testimony is considered substantive evidence of guilt in a
child indecency case, the same reasoning applied in Chambers can be utilized in the
present case. Furthermore, it has long been held that contradictory testimony does not
render the evidence insufficient (21) or destroy other witness testimony. (22) Therefore, we find
the jury was entitled to disbelieve Z.G.'s recantation at trial, and Z.G.'s recantation of her
previous outcry statements to her mother and Long did not destroy their probative value. (23)

 Outcry evidence alone is sufficient to support a criminal conviction requiring proof
beyond a reasonable doubt. (24) Additionally, a finding of guilt may rest on hearsay despite
the victim's recantation. (25) Thus, we conclude that the jury was rationally justified in its
decision to believe the outcry testimony presented at trial and find appellant guilty of
indecency with a child.

 We hold that the evidence is factually sufficient to support a finding that appellant
engaged in sexual contact with Z.G. in Ingleside. It is undisputed that the child was not
appellant's spouse and was younger than seventeen years of age. Affording appropriate
deference to the fact finder's credibility determinations, we cannot say that the verdict is
clearly wrong or manifestly unjust. Therefore, we reject appellant's factual sufficiency
challenge and conclude the evidence is factually sufficient to sustain appellant's conviction
of indecency with a child. Appellant's second issue is overruled.

Extraneous Offense

 We next address appellant's first issue. Here, appellant complains that the trial
court erred when it allowed extraneous offense evidence of the incident that allegedly
occurred in Portland, Texas, to be admitted for consideration of the charged offense
alleged to have occurred in Ingleside, Texas. Specifically, appellant argues that the State
failed to show any intent to offer such evidence for a non-conformity purpose and appellant
was forced to respond to, not only the offense at bar, but also the alleged extraneous
offense. Furthermore, appellant contends that but for the court's admission of testimony
regarding the Portland allegation, the jury would not have returned a guilty verdict.

 An appellate court must review a trial court's decision to admit or exclude evidence
under an abuse of discretion standard. (26) As long as the ruling was within the bounds of
reasonable disagreement, the appellate court should not disturb its ruling. (27) Evidence of
other crimes, wrongs, or bad acts is not admissible if offered to prove the character of a
person in order to show action in conformity therewith. (28) Whether extraneous offense
evidence has relevance apart from character conformity, as required by rule 404(b), is a
question for the trial court. (29) 

 At trial, appellant objected to the first statement about the Portland incident. The
trial court overruled appellant's objection and allowed the witnesses to answer questions
regarding the allegation in Portland. Appellant contends that the testimony regarding the
alleged Portland incident should not have been admitted because it refers to an
inadmissible extraneous offense. (30) However, the Texas Code of Criminal Procedure
specifically provides an exception to rule 404(b) for cases in which appellant is charged
with an offense under Chapter 21 (Sexual Offenses) of the Texas Penal Code. (31) Section
2 of article 38.37 provides that, notwithstanding rule 404:

Evidence of other crimes, wrongs, or acts committed by the defendant
against the child who is the victim of the alleged offense shall be admitted for
its bearing on all relevant matters, including:


 . . . .


(2) the previous and subsequent relationship between the defendant and the
child. (32)

 In the instant case, appellant was charged with indecency with a child, an offense
under Chapter 21 of the Texas Penal Code. (33) The evidence of the extraneous offense
appellant sought to exclude refers to an on-going sexual relationship with Z.G., a child
under seventeen years of age. Therefore, we conclude the evidence of the Portland
incident met the requirements of article 38.37, section 2 and was admissible at trial. We
overrule appellant's first issue.

Conclusion

 Having overruled each of appellant's issues, the judgment of the trial court is
AFFIRMED. 



 

 LINDA REYNA YAÑEZ,

 Justice







Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 26th day of July, 2007.

1. See Tex. Pen. Code Ann. § 21.11 (Vernon 2003). 
2. See Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006).
3. Id. at 415.
4. Tex. Pen. Code Ann. § 21.11 (Vernon 2003). 
5. Id. § 21.11(c)(1).
6. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); see Robertson v. State, 871
S.W.2d 701, 705 (Tex. Crim. App. 1993).
7. See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005).
8. Ketchum v. State, 199 S.W.3d 581, 590 (Tex. App.-Corpus Christi 2006, pet. ref'd); see Villalon v.
State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).
9. Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); Kemple v. State, 725 S.W.2d 483,
485 (Tex. App.-Corpus Christi 1987, no writ).
10. See Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); Gallegos v. State, 918
S.W.2d 50, 55 (Tex. App.-Corpus Christi 1996, pet. ref'd).
11. "Guts" is a term recognized by Z.G. to mean penis.
12. See Kemple, 725 S.W.2d at 485.
13. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Penagraph v. State, 623 S.W.2d 341,
343 (Tex. Crim. App. 1981).
14. Id.
15. See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
16. Id.
17. Id.
18. Id.
19. Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992).
20. Rodriguez, 819 S.W.2d at 873.
21. See Mercado v. State, 695 S.W.2d 25, 29 (Tex. App.-Corpus Christi 1985) aff'd as reformed, 718
S.W.2d 291 (Tex. Crim. App. 1986).
22. See Garcia, 563 S.W.2d at 928; Clawson v. State, 440 S.W.2d 638, 639 (Tex. Crim. App. 1969).
23. See Chambers, 805 S.W.2d at 461.
24. Rodriguez, 819 S.W.2d at 873; see Ex parte Tuley, 109 S.W.3d at 401.
25. Jackson v. State, 110 S.W.3d 626, 631 (Tex. App-Houston [14th Dist.] 2003, pet ref'd).
26. Shuffield v. State, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).
27. Id.
28. Tex. R. Evid. 404(b).
29. Id.; Martin v. State, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).
30. On appeal, appellant argues the purpose of the State in presenting testimony of the alleged Portland
incident was to use character evidence to prove that appellant was prone to commit the offense of indecency
with a child, referencing Texas Rules of Evidence 404(b). Tex. R. Evid. 404(b). Appellant's trial objection to
the testimony was that it was irrelevant. As in Johnson v. State, 803 S.W.2d 272 (Tex. Crim. App. 1990),
overruled on other grounds by Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991), the proper
legal basis for appellant's trial objection "should have been that the evidence was offered to prove an
extraneous uncharged offense not within the permissible scope of 404(b) and was offered to show that
appellant was a criminal generally." Id. at 292. Therefore, appellant failed to make the proper objection at
trial to preserve error for appellate review. However, out of an abundance of caution, we will address
appellant's complaint as if it were properly preserved for our review.
31. See Tex. Code Crim. Proc. Ann. art. 38.37, § 1 (Vernon 2005); Sebalt v. State, 28 S.W.3d 819,
821 (Tex. App.-Corpus Christi 2000, no pet.). 
32. Id. art. 38.37, § 2 (Vernon 2005); see Sebalt, 28 S.W.3d at 821.
33. See Tex. Pen. Code Ann. § 21.11 (Vernon 2003).