**Michael Henry ROHLFING, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 60104.**

Court of Criminal Appeals of Texas, Panel No. 3.

March 11, 1981.

David B. Ziegler, court appointed on appeal only, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann, Larry Knapp, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Michael Henry Rohlfing appeals his conviction for the aggravated robbery of Lorayne[1] Hutton. See Sec. 29.03, V.A.T.P.C., hereafter cited as P.C. A jury found him

---

1. Emphasis underscored and supplied hereafter by the writer unless otherwise indicated.

guilty of the alleged offense and also found he had previously been convicted of the offense of possession of L.S.D., which conviction was alleged for enhancement of punishment purposes, and assessed punishment at 30 years in the Texas Department of Corrections.

■ Appellant challenges the sufficiency of the evidence, claiming he was never properly identified in court as the actual perpetrator of the offense. After the rendition of the verdict by the jury and its approval by the trial judge, it is the duty and practice of this Court, in testing the sufficiency of the evidence, to view it in the light most favorable to the jury's verdict, and we do so. See *Johnson v. State*, 93 Tex.Cr.R. 150, 245 S.W. 710, 711 (1922). See also *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Officer E. F. Jones testified that he and his partner, an Officer O'Brien, who did not testify, were on patrol duty on the night of October 22, 1977, when they heard a police dispatch report that Der Wienerschnitzel, located on Hillcroft Street in Houston, had been robbed. Later, they observed a vehicle run a red light, followed the vehicle and stopped it at a 7–11 convenience store, approximately three-quarters of a mile from Der Wienerschnitzel. After stopping the driver of the vehicle, subsequently identified as appellant, see infra, and getting him out of the car, Jones noticed the similarity between the driver and the description given of the hijacker over the police radio, and arrested appellant. While putting appellant in an arrest position, Jones observed appellant "pulling out of his right hand pocket" a .25 calibre automatic pistol. Appellant and his vehicle were searched and, among other things, a paper bag with the label "Der Wienerschnitzel" thereon, containing money in a money bag, was seized from under the front seat.

The complainant, *Lorraine* Hutton, testified she was working at Der Wienerschnitzel on the night in question as assistant manager. Hutton also testified:

Q. And what was the first thing that you noticed?

A. *He* was pointing a gun at us and asking for money.

Q. And, do you see that man in the courtroom today?

A. Yes, sir, I do.

Q. Would you point him out and describe what *he* is wearing?

A. *He* is sitting right there and *he* is wearing a light beige leisure suit and an orange shirt.

Q. Does *he* look any different today than he did back in October of '77?

A. Yes, *he* does.

Q. How does *he* look different?

A. *He* had longer hair and a bandage on his nose.

Previously, Jones testified:

Q. Do you see that man [that he stopped and arrested] in the Courtroom today?

A. Yes, sir, *he* is sitting down there.

Q. Would you identify what *he* is wearing for the record?

A. *He* is wearing an orange shirt and a beige leisure suit and plastic rimmed glasses.

\*   \*   \*   \*   \*   \*

Q. . . . could you tell the jury is there any difference in his appearance back in October of '77?

A. Yes, sir, *he* is cleaned up a little bit and *he* doesn't have any tape on his nose.

Q. Okay. What do you mean by tape on his nose?

A. Well, some people wear glasses a long time and it forms an irritation on their nose and it looked like *he* had tape on there for that reason or that is what it looked like to me.

After robbing the place, appellant left, with Hutton calling the police. Later, while driving home, Hutton noticed police cars stopped at a 7–11 convenience store. She stopped her car, got out and inquired of a police officer "if there was a suspect that had robbed Der Wienerschnitzel and he asked me if I could identify him and I walked over and I identified him." At this time, appellant's bandage that had been on

his nose when the robbery occurred was off his nose, but his nose was then bleeding. Hutton was asked, "[Did] you testif[y] earlier that you had an occasion to see *this* gentleman at a later period of that night?" and she testified she did and repeated the description given above.

Douglas Crow, a high school student who worked at Der Wienerschnitzel, testified that when he was going to ask a purported customer to go to another window, the person then pulled a pistol on him and told him "this is a robbery." Crow got what little money was in the register and gave it to his robber, the appellant. Crow also testified:

Q. And do you see that person in the Courtroom today?

A. Yes, sir.

Q. Would you please point him out to the members of the jury, please?

A. *He* is the man in the orange shirt.

Crow also testified that the robber wore a bandage on his nose on the night in question.

Crow testified that he later attended a police lineup. He also identified in court the person who robbed him.

Q. Did you identify *this* person in the lineup because *he* was the man that robbed you?

A. Yes, sir.

Jerald Quick testified he was a customer at Der Wienerschnitzel on the night in question and observed the robbery occur. He also testified to the following:

Q. I want you to look around the Courtroom to see if you see anyone who looks familiar and might have been that actor?

A. *That* gentleman right there.

Trial counsel for appellant also questioned Quick:

Q. Did *this* gentleman take anything from you?

A. No, sir, *he* did not.

Appellant did not testify or offer any evidence at his trial.

At the punishment hearing, Deputy Sheriff David Morgan testified he took fingerprints of appellant, made a comparison to prints found in a penitentiary packet and, in his opinion, both sets of prints were made by one and the same person.

Q. And, again, whose print is this?

A. *The gentleman sitting over there in the leisure suit, the tan leisure suit with the orange shirt.*

█ Thus, from the above, it is easily seen that all of the State's witnesses identified the person who committed the robbery as "the man in court wearing an orange shirt and a light beige/tan leisure suit." Although at no time did the prosecutor request that the record be made to reflect that the person referred to in the courtroom was appellant, we conclude from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant. Absent any indication, prior to appeal, that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than appellant may have been identified and that the jury nonetheless chose willfully to convict appellant without evidence that he was the sole perpetrator of this offense. Furthermore, the jury verdict in this cause reflects: "We, the Jury, find the defendant, MICHAEL HENRY ROHLFING, "Guilty" of aggravated robbery, as charged in the indictment." The record bears out that appellant and no other was on trial in this cause. No objection was made by appellant to the employed identification procedure. If it be appellant's contention that another person, and not he, was identified by the State's witnesses, and he does not so claim in his brief, we believe it was incumbent upon him, by objection to the identification procedure employed or by an offer of a bill of exception detailing the circumstances which would reflect any possible confusion or misidentification in the in-court identification process, to preserve the issue by making same part of the record. Appellant's contention is, therefore, overruled.[2]

2. We do urge, however, that prosecutors follow the better practice of using the talismanic

words "Let the record reflect . . ." even though we find from the record and the evidence that

Appellant next complains the indictment is fundamentally defective as it fails to describe the property and merely alleges that appellant committed "theft of property" and that he did it "with intent to obtain and maintain control of the property." No motion to quash the indictment was filed, therefore, reversal is mandated only if the indictment is so defective as to state no offense at all. *Ex parte Lucas*, Tex.Cr.App., 574 S.W.2d 162 (1978), controls the disposition of this case. See also *Franklin v. State*, Tex.Cr.App., 607 S.W.2d 574 (1980). In an indictment charging aggravated robbery, there is no requirement to allege a completed theft. The prior cases under the old penal code do not apply.

A person commits the offense of aggravated robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally, knowingly or recklessly causes serious bodily injury to another, or uses or exhibits a deadly weapon. See Secs. 29.02 and 29.03, P.C.

The current penal code robbery offenses are assaultive in nature and are not aggravated forms of theft; therefore, a description of property is unnecessary in an indictment brought under Sec. 29.03, P.C. Each and every required element is alleged in the indictment here and we find no fundamental defect. See also *Robinson v. State*, Tex.Cr.App., 596 S.W.2d 130 (1980). Appellant's ground of error is therefore overruled.

Appellant lastly complains that the trial court's charge is fundamentally defective for failure to define "in the course of committing theft," as alleged in the indictment. He made neither objection to nor request for such instruction to be included in the final charge given to the jury.

The trial court defined for the jury the offense of aggravated robbery but did not define "in the course of committing theft." Sec. 29.01, P.C. However, by the charge given, a conviction was not authorized without requiring the jury to find all of the elements of the offense charged. The court's final charge did require the jury to find that the robbery occurred while "in the course of committing theft" and applied the law of the case to the facts of the case. Although "in the course of committing theft" should have been defined, failure to do so is not, under this record, fundamental error. Compare *Evans v. State*, Tex.Cr. App., 606 S.W.2d 880 (1980), where this Court reversed a conviction for failure of the trial court's charge, which did define "in the course of committing theft," to require the jury to find that the robbery occurred while in the course of committing theft. This was held to be an omission of an essential part of the offense charged, fundamental error, and the conviction was ordered reversed. "When applying the law to the facts, a trial court charges a jury on the component parts of an element of the offense rather than the element itself, the charge must require the jury to find all of the parts of that element in order to convict." See also *Ex parte Rider*, Tex.Cr. App., 567 S.W.2d 192, 195 (1978).

As in the parable of the blind man and the elephant, in *Evans*, supra, the jury was told what it ["in the course of committing theft"] looked like, but by the charge given the jury was not told it ["in the course of committing theft"] must be found in order to find appellant guilty; i. e., an element of the offense was omitted when the trial court in its charge applied the law to the facts of the case. Here, the jury was told they had to find it ["in the course of committing theft"] in order to convict appellant, but were not told what it ["in the course of committing theft"] looked like; i. e., an element of the offense was not omitted when the trial court applied the law to the facts of the case in its charge.

See also *Cumbie v. State*, Tex.Cr.App., 578 S.W.2d 732 (1979), which provides for guidelines for determining whether a charge is fundamentally defective. Here, however, the omission of the statutory defi-

the witnesses' testimony in this cause was tantamount to "Let the record reflect . . ." Compare *Erwin v. State*, Tex.Cr.App., 350 S.W.2d 199, 202 (1961).

nition did not, even tacitly, authorize the jury to convict appellant *for conduct not* constituting the offense of aggravated robbery. The phrase "in the course of committing theft," is defined in the Penal Code, see Sec. 29.01(1), P.C., and because of this, by necessary implication, it takes on a specific legal meaning. However, the record here reflects that the offense of robbery occurred *during the commission of a theft.* We fail to see, under this record, how the jury could have been misled by the failure of the charge to define the phrase "in the course of committing theft." See Art. 36.-14, V.A.T.C.C.P. Further, the statutory definition appears to expand the common meaning or common usage of the phrase, "in the course of committing theft." While, as a logical matter, we cannot conclude that "in the course of committing theft," being defined in Sec. 29.01(1), P.C., is a phrase used only in its common meaning and therefore always unnecessary to define, see *King v. State*, Tex.Cr.App., 553 S.W.2d 105 (1977), we note that of the three circumstances defined as "in the course of committing theft" under Sec. 29.01(1), P.C., only the second applies in the instant case and that definition, viz; conduct that occurs *during the commission of theft* coincides exactly with the common meaning of "in the course of committing theft." Because of the above, we find no inherent unfairness to appellant in the failure of the trial court to define the phrase, "in the course of committing theft," and hold that such failure or error was not calculated to injure the rights of appellant. We, therefore, find that the charge here was not fundamentally defective. If there was error, it was at a minimum harmless error, due to the fact the charge given was sufficient in itself to protect the rights of appellant and adequately sets forth the law applicable to the case. Appellant's ground of error is, therefore, overruled.

The judgment is affirmed.