**Bernardino MERCADO, a/k/a "Nino", Appellant,**

v.

**STATE of Texas, Appellee.**

No. 13–84–201–CR.

Court of Appeals of Texas, Corpus Christi.

April 18, 1985.

Rehearing Denied May 23, 1985.

Joseph Connors, III, McAllen, for appellant.

Theodore C. Hake, Edinburg, for appellee.

Before NYE, C.J., and SEERDEN, J.

## OPINION

SEERDEN, Justice.

Appellant was convicted of attempted murder in a jury trial. The trial court assessed punishment at five years confinement in the Texas Department of Corrections.

The first five grounds of error submitted by appellant contain various shades of the common complaint that the trial court committed fundamental error in the jury charge when it included the following instruction:

"In passing upon the intent of the defendant, if any, you should look to the character of the weapon used. If the weapon was a deadly weapon, you may infer, from the use of such weapon, an

intent to kill. A firearm is a deadly weapon. A gun or pistol used as a firearm is a deadly weapon per se."

The State concedes that there is no such inference of intent to kill under current Texas Law and that the instruction was erroneous and constituted fundamental error. *See Harrell v. State,* 659 S.W.2d 825 (Tex.Crim.App.1983); *Brown v. State,* 657 S.W.2d 143 (Tex.Crim.App.1983); *Gutierrez v. State,* 672 S.W.2d 633 (Tex.App.—Corpus Christi 1984, pet. granted).

However, this case was submitted to this Court prior to the recent decision of *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim. App., 1985) which specifically overruled the line of cases reflected by *Cumbie v. State,* 578 S.W.2d 732 (Tex.Crim.App.1979) which hold that fundamental error in the court's charge to the jury requires "automatic" reversal.

In light of the instructions provided in *Almanza,* the finding that the charge contains error must simply begin our inquiry, rather than end it.

Under the new interpretation of Article 36.19, TEX.CODE CRIM.PROC.ANN. (Vernon 1981), we must first determine whether the error in the charge was the subject of timely objection in the trial court. If so, "reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Almanza,* at 171.

No objection was made at the trial to the erroneous instruction in this case.

Therefore, we must proceed to the second type of error discussed by Judge Clinton in *Almanza,* "if no proper objection was made at trial and the accused must claim that the error was 'fundamental' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial' in short 'egregious harm.'" This is the type of harm we must consider in light of our record.

*Almanza* directs that the degree of harm must be assayed:

1) in light of the entire jury charge;
2) the state of evidence
   a. including the contested issues, and
   b. the weight of the probative evidence;
3) the argument of counsel; and
4) any other relevant information revealed by the record of the trial as a whole.

With these principles in mind, we undertake our discussion to determine if the erroneous instruction "is so egregious and creates such harm that it deprives the accused of a 'fair and impartial trial.'" *Almanza,* at 172.

The material portions of the indictment provide "that Bernardino Mercado ... on or about November 2, A.D., 1983, ... with the specific intent to commit the offense of murder ... intentionally and knowingly attempted to cause the death of an individual, Valentin Sanchez, by shooting the said Valentin Sanchez with a firearm, said attempt amounting to more than mere preparation that tends but fails to effect the commission of the offense intended...."

The evidence presented showed that on November 2, 1983, Valentin Sanchez punched an intoxicated driver in the face outside of the Las Vegas Bar around 5:30 p.m. Sanchez testified that appellant was the person he hit that afternoon. According to Sanchez, appellant said at that time that he was the brother of "La Changa" and that he would come back to the bar in one hour and kill Sanchez and his family. About an hour after the initial altercation at the bar, appellant, several other adults, and some children returned to the bar in a Buick. As the car pulled up to the bar, three of the adults began shooting firearms at Sanchez. Sanchez was shot in his upper arm, about six inches from his heart.

Enrique Sanchez, the victim's brother, testified that he was at the Las Vegas Bar

when his brother hit appellant in the face.[1] He further testified that appellant said he was the brother of "La Changa" and would come back in an hour.

Other witnesses called by the State included a barmaid from the Las Vegas Bar whose fingers were apparently shot off during this incident, a police detective who described the scene shortly after the shooting and presented physical evidence recovered at the scene, including both a spent and loaded .30 caliber shell casing and a spent and loaded 12 gauge shell, the hospital records custodian who introduced the victim's emergency room and medical records and who also testified that appellant would have killed the victim had it been six inches closer to the center of his body, the victim's nephew, who was outside the bar with the victim when the shooting started, another barmaid who was too drunk to know what happened and a bar patron who testified he heard shots which sounded as though they came from a large caliber gun.

While the record is not specific in reflecting the identity of appellant, those who testified as to the identity of the assailants all made their description consistent with his identity and constituted sufficient evidence, along with Valentin Sanchez' positive identification, to justify the jury in finding appellant to be the party who shot the victim.

Appellant testified in his own defense. He stated that, on the day of the shooting, he had gone to the 30–30 Bar in Mission where he met someone who told him that there might be a construction job at the Las Vegas Bar. This person, whom appellant had never seen before, was described as a "tall, slender, white skinned guy". This person drove appellant over to the Las Vegas Bar where the other person became involved in an altercation with Valentin Sanchez. The appellant and the other man then left the bar, but the other man told appellant that he was going to go back to the Las Vegas Bar and take care of business. Appellant testified that he did not want to become involved in any trouble, so he went to visit his aunt.

On cross-examination, appellant testified that this other man was much taller and much skinnier than he. Appellant also testified that "La Changa" was one of his (appellant's) brothers—although he also testified that the person he had never seen before said, "I am the brother of 'La Changa'." Appellant denied being at the bar when Sanchez was shot.

Two other witnesses testified in behalf of appellant. They stated that appellant was at his aunt's house watching television when the shooting occurred.

■ A review of the entire record, from appellant's opening statement wherein he stated "My client is innocent until it is proven beyond a reasonable doubt that he did shoot him" to his closing argument which was primarily directed to attacking the identification of appellant at the scene when the shooting took place, leads us to the conclusion that the defense theory in this case was alibi and nothing else. Appellant never questioned the allegation in the indictment or the fact that someone intended and attempted to kill the victim, Valentin Sanchez.

To require a reversal because of the erroneous instruction included in this jury charge, where not objected to by appellant's counsel, under the facts of this case, would be to produce the kind of hyper-technical result rejected by Judge Clinton in *Almanza,* 686 S.W.2d at 173 where he states: "Those kinds of judicial pronouncement engender disrespect for the courts and the law. As a court of last resort, we should not be so far removed from reality that we cannot see when common sense coincides with the fair administration of justice."

We hold that the inclusion of the erroneous instructions in the charge to the jury was not such egregious error as to deprive the appellant of a fair and impartial trial.

---

1. See disposition of appellant's eighth ground of error.

Appellant's grounds of error one through five are overruled.

■ In his sixth ground, appellant complains that the trial court did not make an affirmative finding that a firearm was used in the commission of the offense until after notice of appeal was given. The record shows that the jury found appellant guilty on March 29, 1984, and that on that same date the trial court accepted the verdict and found appellant guilty. A pre-sentence report was ordered and on April 19, 1984, appellant's punishment was assessed and he was sentenced. Immediately after he was sentenced, appellant gave oral notice of appeal. Immediately thereafter, during the same proceedings, the State's attorney asked the trial court to make an affirmative finding that a firearm was used in the commission of the offense. Appellant's counsel specifically announced "no objections, Your Honor." The written judgment, signed on April 19, 1984, contains an affirmative finding that appellant used and exhibited a firearm during the offense. In light of appellant's counsel's express acquiescence to the procedure used, error, if any, was waived. Appellant's sixth ground of error is overruled.

■ In his seventh ground of error, appellant contends that only the jury, not the judge, could make an affirmative finding that a firearm was used, citing *Ex parte Thomas*, 638 S.W.2d 905 (Tex.Crim. App.1982). Technically, appellant is correct, and we reform the trial court's judgment to reflect that the jury found the use of a firearm. *See Reed v. State*, 649 S.W.2d 357 (Tex.App.—Fort Worth, 1983, no pet.). His argument that the jury did not find the use of a firearm, however, is without merit. The indictment alleged the use of a firearm and the charge required the jury to find the use of a firearm in order to convict. Under these circumstances, the verdict necessarily included the finding. *See Chavez v. State*, 657 S.W.2d 146 (Tex.Crim.App.1983); *Barecky v. State*, 639 S.W.2d 943 (Tex.Crim.App.1982); *Ex parte Moser*, 602 S.W.2d 530 (Tex.Crim. App.1980). Appellant's seventh ground of error is partially sustained and partially overruled.

In his eighth ground of error, appellant challenges the sufficiency of the evidence. Appellant contends that the State failed to prove that he was the person who shot the victim. The State argues that this case is controlled by *Rohlfing v. State*, 612 S.W.2d 598 (Tex.Crim.App.1981) and that any error in identifying appellant is related essentially to trial procedure. As we understand appellant's ground of error, however, his attack on the State's proof on identity is more substantive than procedural, despite the fact that this case suffers the same procedural infirmities as *Rohlfing*.

In *Rohlfing*, a robbery victim identified her assailant in the courtroom as "sitting right there and he is wearing a light beige leisure suit and an orange shirt ... and plastic rimmed glasses." The Court of Criminal Appeals, in affirming the conviction, stated:

Although at no time did the prosecutor request that the record be made to reflect that the person referred to in the courtroom was appellant, we conclude from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant. Absent any indication, prior to appeal, that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than appellant may have been identified and that the jury nonetheless chose willfully to convict appellant without evidence that he was the sole perpetrator of this offense.

In *Rohlfing*, there was direct evidence that the man in the leisure suit was the assailant, and the only issue was whether the appellate court could conclude that the man in the leisure suit was the appellant. In the present case, the issue is more complex, for two questions must be answered: (1) Did any of the witnesses identify any one as having fired the shot that hit the victim; and (2) if so, can this Court conclude that appellant was the person identified?

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the

verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984).

On the issue of who shot the victim, the State offered the testimony of Valentin Sanchez, Jose Trevino, and Enrique Sanchez. As noted above, the evidence shows that in the late afternoon of November 2, 1983, Valentin Sanchez punched the appellant after an altercation outside the Las Vegas Bar. Appellant left the bar, vowing to return to kill Sanchez. About an hour later, appellant, three other adults and some children came to the bar in a Buick. Three of the adults, including appellant, fired some weapons and various bar patrons fled for cover. The victim, Valentin Sanchez, was shot in the upper arm, six inches from his heart.

The trial court's charge to the jury required the jury to find that appellant shot Valentin Sanchez and it *did not* authorize the jury to convict appellant *as a party.* The State was, therefore, required to prove that the offense was committed as alleged in the charge. *See Benson v. State,* 661 S.W.2d 708 (Tex.Crim.App.1982).

■ There is no indication in the record that the jury was misled by an incorrect identification. We do not presume that some person other than the defendant was identified by the witness, and the jury arbitrarily selected defendant as the perpetrator of the offense without any other identification evidence. Viewing all of the testimony, we find sufficient identification evidence to sustain the conviction under *Rohlfing.*

The gist of appellant's argument is, however, that, when the cross-examination testimony is also considered, the direct examination testimony is too incredible to support the conviction. We do not agree. Valentin Sanchez testified that Mercado shot him. On cross-examination, he testified that while he did not *see appellant shoot,* he was able to state that "they followed me and he fired at me." Thus, while Sanchez may not have *seen* his attacker, he may well have been able to determine his at-

tacker's identity through observation of the appellant's location, the location of others with guns, or the proximity and movements of those involved in the shooting. Thus, Sanchez' testimony that Mercado shot him is not necessarily inconsistent or contradictory to his admission of not *seeing* his attacker.

■ Moreover, even if the victim's testimony was contradictory, it has long been held that contradictory testimony does not render the evidence insufficient. The fact that a witness makes some contradictory statements goes to the weight of the evidence, but *the previous testimony is not thereby destroyed as a matter of law. Clawson v. State,* 440 S.W.2d 638 (Tex. Crim.App.1969). The jury, as the trier of fact, thus could believe or reject any portion of Valentin Sanchez' testimony. *Barros v. State,* 661 S.W.2d 337 (Tex.App.— Corpus Christi 1983, no pet.). Likewise, it was within the jury's province to accept or reject Jose Trevino's testimony which incriminated appellant. The evidence is sufficient to sustain the conviction. Appellant's eighth ground of error is overruled.

The judgment of the trial court is AFFIRMED and the judgment REFORMED to show that the jury found appellant used a firearm in the commission of the offense.