# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00639-CR

**Paul Michael Shumaker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2012-311, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Paul Michael Shumaker was indicted for two counts of aggravated sexual assault of an adult man with significant mental disabilities, J.P. *See* Tex. Penal Code § 22.021(a) (setting out elements of offense of aggravated assault of disabled person), (e) (explaining that offense is first-degree felony). The first count alleged that Shumaker intentionally or knowingly caused his sexual organ to penetrate J.P.'s mouth without J.P.'s consent, and the second count alleged that Shumaker intentionally or knowingly caused J.P.'s sexual organ to penetrate Shumaker's mouth without J.P.'s consent. Both counts were alleged to have occurred on the same day. On the night of the alleged offenses, J.P. spent the night at Shumaker's home, and on the following day, Shumaker drove J.P. to the house of his brother, D.P. At the end of the trial, the jury found Shumaker guilty of both counts, assessed his punishment at five years' imprisonment for each count, and recommended that Shumaker be placed on community supervision. In accordance with the jury's recommendation,

the district court entered its judgment, sentenced Shumaker to five years' imprisonment for each count, suspended the sentences, and placed Shumaker on community supervision for ten years. *See id.* § 12.32 (listing permissible punishment range for first-degree felony). On appeal, Shumaker asserts that the evidence is legally insufficient "because the State failed to prove [his] identity as the perpetrator of the offense[s]." We will affirm the district court's judgments of conviction.

## DISCUSSION

**Sufficiency of the Evidence**

In his sole issue on appeal, Shumaker contends that the evidence is legally insufficient to support his two convictions. When presenting this argument, Shumaker limits his sufficiency challenge to the evidence establishing his identity as the perpetrator and insists that the State failed to prove that he was the perpetrator in each offense. As support for this argument, Shumaker asserts that during the trial, J.P. discussed someone named Paul when testifying about the offenses but that evidence was introduced establishing that Shumaker went by the name "Buddy" rather than by his first name Paul. Moreover, Shumaker contends that "[n]o one ever attempted to tie the 'Paul' discussed by [J.P.] with the Appellant referred to as 'Buddy' by everyone including [J.P.]" Specifically, Shumaker asserts that J.P. was never asked if Buddy and Paul were the same person and that no evidence was introduced showing that Shumaker was the only Paul that J.P. knew. Moreover, Shumaker notes that when J.P. was called to the stand, he was unable to identify Shumaker in court as the person who committed the alleged offenses. In addition, Shumaker points out that even though the evidence presented at trial established that J.P. went to Shumaker's home on more than

2

one occasion and spent the night there on New Year's Eve, that Shumaker and J.P. watched television at Shumaker's home, and that Shumaker had dogs, J.P. provided testimony that contradicted that evidence when describing his interactions with "Paul," who J.P. asserted committed the offenses. Specifically, Shumaker notes that J.P. could not describe what "'Paul's' house looked like or where it was located," denied watching "movies at 'Paul's' house, denied playing on his computer at 'Paul's' house, and further denied that 'Paul' had any pets." In light of the above, Shumaker asserts that there is no evidence establishing that Shumaker is the person that J.P. was referring to when discussing Paul and that "[t]he only reasonable inference that can be made is that 'Paul' is not the same person as [Shumaker] and the State has failed to prove an essential element of the offense[s]."

Under the legal-sufficiency standard, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772,

3

778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

The identity of a perpetrator may be proven by direct evidence, circumstantial evidence, or inferences. *Robertson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd); *see also Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (setting out types of evidence that may be used to establish identity and noting that although victim misidentified juror as perpetrator, circumstantial evidence pointed to defendant as perpetrator, including testimony from officer who arrested defendant at scene). Proof of identity through circumstantial evidence is subject to the same standard as is proof by direct evidence, and the sufficiency of the evidence identifying the defendant as the offender is determined from the cumulative effect of all the evidence. *Hudson v. State*, No. 03-04-00733-CR, 2006 Tex. App. LEXIS 7280, at *19-20 (Tex. App.—Austin Aug. 18, 2006, no pet.) (mem. op., not designated for publication). Moreover, "[t]he absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony," *Jones v. State*, No. 10-08-00261-CR, 2009 Tex. App. LEXIS 8923, at *3 (Tex. App.—Waco Nov. 18, 2009, pet. denied) (mem. op., not designated for publication), *see Hudson*, 2006 Tex. App. LEXIS 7280, at *8, and "[e]ven a total failure . . . to identify the defendant on one occasion goes only to the weight of that person's testimony, not its admissibility," *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

As pointed out by Shumaker, the record shows that J.P. had difficulty identifying Shumaker. In his testimony, J.P. stated that he remembered a man named "Paul," but when J.P. was asked if he saw Paul in the courtroom, he answered, "No, not yet. Not yet." Next, when the State directed J.P. to look in a particular portion of the courtroom and asked J.P. if he saw Paul, J.P. said, "No, not really. Oh, Paul? I don't see Paul." In addition, as emphasized by Shumaker, J.P. was unable to describe what Paul's house looked like and stated that he did not remember if Paul had any pets.

However, later in his testimony, J.P. pointed at someone in the courtroom and identified that person as Paul, and nothing in the record indicates that anyone commented that the person that J.P. pointed at was not Shumaker.[1] *See Kalka v. State*, No. 07-02-00462-CR, 2003 Tex. App. LEXIS 8947, at *8-9 (Tex. App.—Amarillo Oct. 20, 2003, pet. ref'd) (not designated for publication) (disagreeing with assertion that inconsistencies in testimony from victim with mental disability rendered testimony untrustworthy and noting that inconsistencies simply affect "the weight a juror may assign to their testimony"); *cf. Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd) (explaining that "[c]hild victims of sexual crimes are afforded great latitude when testifying and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult"). In fact, when Shumaker later testified and was asked,

---

[1] In his brief, Shumaker notes that J.P. stated that Paul was on the left side of the room and then asserts that this is inconsistent with the testimony of Officer Ben Haynes, who testified that from his perspective Shumaker was sitting on the right side of the room. As discussed above, Shumaker did not object or assert that J.P. had identified someone other than himself during J.P.'s testimony and did not dispute the State's characterization that J.P. had pointed at and identified him when the State was cross-examining him. On the contrary, Shumaker agreed that J.P. had recognized him. Moreover, it is not entirely clear that these statements are in fact inconsistent because J.P.'s identification did not contain any indication that J.P. was referencing the direction from his perspective.

"When [J.P.] raised his finger in your direction and singled you out as Paul, that seemed rather credible, did it not," Shumaker did not dispute that J.P. pointed in his direction and instead answered that J.P. did not "know [him] as Paul. [J.P.] knows [him] as Buddy." Further, Shumaker agreed that when J.P. was testifying, J.P. recognized him as Paul. *Cf. Rohlfing v. State*, 612 S.W.2d 598, 600-01 (Tex. Crim. App. 1981) (overruling sufficiency challenge that defendant was not properly identified in court, in part, because defendant failed to object to identification procedure used in court).

When testifying about "Paul," J.P. explained that he met Paul at a gas station and that Paul asked if he needed help. In addition, J.P. answered, "Uh-huh," when asked if he met Paul on New Year's Eve. Furthermore, J.P. testified regarding what he was wearing when he met Paul and stated that the police took those items, including his underwear, from his house when they talked with him about the offenses. Moreover, during his testimony, J.P. mentioned various sexual acts that occurred between him and Paul, including statements that Paul's mouth touched his penis and that he touched Paul's penis with his mouth. *See* Tex. Code Crim. Proc. art. 38.07 (explaining that sexual-assault conviction is supportable by uncorroborated testimony of victim of sexual offense if victim informed any person about alleged offense within one year after date that offense occurred and excusing time restraint for victims with "mental disease, defect, or injury"); *see also Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (explaining that testimony of victim alone is sufficient to support conviction in sexual-assault case).

In addition to J.P.'s testimony regarding who committed the alleged offenses, other evidence was introduced establishing that J.P. and Shumaker were together on the night of the alleged offenses through the testimony of Shumaker, D.P., and Deputy John Hall. Specifically,

6

Shumaker testified that he met J.P. for the first time on New Year's Eve at a gas station when J.P. was opening the gas-station doors for customers, that he left the gas station to go to a party, that he saw J.P. was still at the gas station hours later, that he offered to drive J.P. to D.P.'s house where J.P. was living, that D.P. was not home, that he agreed to let J.P. stay at his house for the evening, and that he told J.P. that J.P. would have to sleep in his bed because his dogs had ruined the carpet. In his testimony, Shumaker explained that he and J.P. were fully clothed when they were in bed, denied initiating any sexual conduct with J.P., and stated that he simply wanted to be J.P.'s friend, but he related that when he woke up early in the morning, he discovered J.P.'s hand on his crotch and believed that J.P. had been kissing him while he was asleep. Schumaker recalled that he told J.P. to stop and that they went back to sleep. In addition, Shumaker explained that he tried to take J.P. home the next morning, that there was no answer at D.P.'s house, that he took J.P. to work with him, that he drove J.P. to D.P.'s house later that afternoon, and that he talked with D.P. about J.P. when they arrived at the home. Furthermore, Shumaker explained that over the next few days, he continued to hang out with J.P. and brought J.P. back to his house to watch movies and play on the computer.

In addition to Shumaker's testimony, a recording of a conversation that Shumaker had with the police was played for the jury. On the recording, Shumaker admitted that he took J.P. to his home and that he and J.P. slept in the same bed on New Year's Eve. Further, Shumaker related that J.P. tried to initiate some sexual activity but that he told J.P. that "we don't know each other that well." Moreover, on the recording, Shumaker described J.P. as an attractive man.

Before Shumaker testified, D.P. was called to the stand to discuss his interactions with Shumaker. In his testimony, D.P. explained that he first met Shumaker on New Year's Day

when Shumaker drove J.P. home and specifically identified Shumaker in court as the man who had driven J.P. home. Moreover, D.P. testified that after J.P. returned home from hanging out with Shumaker on a subsequent occasion, he noticed that J.P. was performing an internet search concerning sexual topics, that he initiated a conversation with J.P. about his internet search, and that as a result of that conversation, he called the police. In addition, he explained that he asked the police to issue a criminal trespass warning against Shumaker.

After D.P. finished his testimony, Officer Hall was called to the stand to describe his investigation of the alleged offenses and to discuss a conversation that he had with Shumaker about the night of the alleged offenses, and a recording of that conversation was played for the jury. On the recording, J.P. explained that a man kissed him on New Year's Eve on the man's bed and discussed other sexual contact that occurred, and Officer Hall referred to the man as Paul. In his testimony, Officer Hall explained that during his investigation, he collected the clothes that J.P. wore when he was with Shumaker, and later a DNA technician for the police, Allison Heard, testified that she performed DNA testing on the items that Officer Hall collected and that the testing performed on J.P.'s underwear revealed skin cells that were consistent with a mixture of J.P.'s and Shumaker's DNA profiles. In addition, although Heard explained that there are several ways in which skin cells may get transferred to an object without someone actually touching the object, including transfers from other objects, she questioned the ease with which skin cells might be transferred to clothing that is underneath additional layers of clothing but admitted that she could not rule that out without doing additional testing.

8

In light of our standard of review; given the evidence summarized above, including the evidence establishing that J.P. was with Shumaker at the time of the alleged offenses and spent the night at Shumaker's home on the night of the alleged offenses, the consistency between Shumaker's testimony regarding how he and J.P. met and J.P.'s testimony addressing how he and "Paul" met, the evidence establishing that Shumaker brought J.P. home on the morning after the offenses, the evidence establishing the occurrence of the offenses in question, and the portion of J.P.'s testimony in which he identified "Paul" in the courtroom; and in light of the reasonable inferences that the jury was free to make from that evidence, we believe that the evidence was legally sufficient to establish Shumaker's identity as the offender at issue. *See Clark v. State*, 47 S.W.3d 211, 214-15 (Tex. App.—Beaumont 2001, no pet.) (overruling sufficiency challenge based on premise that victim was unable to identify him as man who had assaulted her and determining that even if no witness could identify defendant as perpetrator, verdict was not improper if other evidence indicated that he was perpetrator); *see also Kalka*, 2003 Tex. App. LEXIS 8947, at \*10 (determining that fact that victim "may have had the mind of a six year old, that her testimony may have been inconsistent at times, and that she could not say the word 'confused,' does not strip the verdict of . . . legally . . . sufficient evidentiary support given the entirety of the evidence and the jury's right to weigh it and assess the credibility of those testifying"). Accordingly, we overrule Shumaker's issue on appeal.

## CONCLUSION

Having overruled Shumaker's issue on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   August 20, 2015

Do Not Publish