

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00032-CR
No. 02-23-00033-CR

_____

RICKY DON MARTINEZ JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from County Court at Law No. 1
Wise County, Texas
Trial Court Nos. CR-82603, CR-83467

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Ricky Don Martinez Jr. appeals his convictions for assault causing bodily injury and for unlawful restraint. *See* Tex. Penal Code Ann. §§ 20.02, 22.01(a)(1). He raises three issues on appeal: (1) the sufficiency of the evidence identifying him as the perpetrator of the crimes; (2) the trial court's refusal to charge the jury on assault by offensive contact, which he claims is a lesser-included offense of assault causing bodily injury; and (3) the trial court's admission, during the punishment phase, of prior convictions that the State allegedly failed to produce in violation of the Michael Morton Act, *see* Tex. Code Crim. Proc. Ann. art. 39.14. Because (1) there was sufficient evidence of Martinez's identity, (2) assault by contact is not a lesser-included offense of assault causing bodily injury as charged, and (3) Martinez failed to preserve his Michael Morton Act challenge, we will affirm.

## I. Background

Martinez's two crimes—assault and unlawful restraint—stem from a single incident involving Mirna Rodriguez.

Rodriguez met Martinez on Facebook, and the two began a romantic relationship about two weeks before the incident. On the night of the incident, Rodriguez—who worked and lived at a Roadway Inn—walked with Martinez to his house. When they arrived at his house, the couple went into his bedroom and had sex. Around 1:00 a.m., Rodriguez told Martinez that she needed to go home because she had work the next morning. As she was putting her clothes on, "all [of] the

sudden he hit [her] in the head and . . . just came at [her]," "saying bad words[ and] cussing at [her]." According to Rodriguez, Martinez accused her of not being faithful and "thought [she] had somebody at the hotel waiting for [her]."[1]

After about an hour of Martinez's hitting and cursing at Rodriguez while she continued to tell him she wanted to leave, she "tried to jump out [of] his window[,] but he grabbed [her] arm" and came out of the window with her. Martinez followed Rodriguez and continued "cussing at [her] and threatening [her]" as she walked back to the Roadway Inn. Finally, she told him she forgave him and would not report him to the police, so he "gave [her] a hug" and left.

Later that day, Rodriguez's friend took her to the police station to report the incident. Rodriguez's friend identified Martinez by name, and Rodriguez confirmed his identity from a photograph and told the police where he lived.

A jury convicted Martinez of assault causing bodily injury and unlawful restraint.[2] *See* Tex. Penal Code Ann. §§ 20.02(a), 22.01(a)(1). After the parties presented punishment evidence—including four certified judgments of Martinez's

---

[1]The jury saw photographs of Rodriguez's injuries, and Rodriguez explained that the bruises on her arms were "[w]here he was holding [her so she] wouldn't run," and the cuts on her face and bruises on her back were from Martinez's hitting her with a closed fist.

[2]The State amended the information charging Martinez with bodily-injury assault to allege that the assault was committed against a person with whom Martinez had a dating relationship. This allegation was omitted from the jury charge, though.

prior convictions—the trial court sentenced him to 365 days' confinement for each offense. *See id.* §§ 12.21(2), 20.02(c), 22.01(b).

## II. Discussion

In his first issue, Martinez challenges the sufficiency of the evidence identifying him as the perpetrator of the crimes.

### A. Sufficiency of the Evidence Identifying Martinez

Martinez claims that the State did not distinguish between him—Ricky Don Martinez Jr.—and his father—Ricky Don Martinez Sr.—which, according to Martinez, created "problematic" ambiguities.[3] And although Rodriguez identified Martinez and confirmed that her assailant was "the Defendant," he argues that she "d[id] not have a strong grasp of legal terms, legal procedures, or of the English language" so it is unclear whether she understood who the term "Defendant" referred to.

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). An essential element of any crime is the defendant's identity; the

---

[3]Martinez lived with his parents and his daughter.

4

State must prove that the defendant is the person who committed the charged offense. *Ward v. State*, No. 02-19-00246-CR, 2021 WL 386936, at *2 (Tex. App.—Fort Worth Feb. 4, 2021, no pet.) (mem. op., not designated for publication); *Anderson v. State*, No. 05-16-01157-CR, 2017 WL 5897903, at *4 (Tex. App.—Dallas Nov. 29, 2017, pet. ref'd) (mem. op., not designated for publication). A defendant's identity may be shown by direct or circumstantial evidence and by reasonable inferences from that evidence. *Balderas*, 517 S.W.3d at 766; *Meeks v. State*, 897 S.W.2d 950, 954–55 (Tex. App.—Fort Worth 1995, no pet.). The jury is the sole judge of credibility and weight to be attached to testimonial evidence. *Balderas*, 517 S.W.3d at 766; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

Evidence of identification is sufficient to support a conviction if "from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to [the defendant]." *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel Op.] 1981); *Anderson*, 2017 WL 5897903, at *4; *Momentoff v. State*, No. 02-12-00335-CR, 2013 WL 5967107, at *4 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op., not designated for publication); *Purkey v. State*, 656 S.W.2d 519, 520 (Tex. App.—Beaumont 1983, pet. ref'd).

### 2. Evidence Identifying Martinez

While Martinez concedes that Rodriguez identified him at trial by name and descriptor (as opposed to by pointing at him or describing an article of clothing he was wearing at trial), he claims that this is insufficient because (1) he shares a name

5

with his father; and (2) according to Martinez, Rodriguez did not understand the "Defendant" descriptor she was using.

First, as to the shared name, the jury could not have been confused because Martinez's father's name was never mentioned at trial. And while the two men may have lived at the same house, there is no evidence that his father played any role in the events at issue, apart from his potential presence elsewhere in the house on the night of the incident.[4] Plus, Rodriguez provided circumstantial descriptors of her assailant—such as the fact that he shared a home with his parents and daughter—and those descriptors were not true of Martinez's father. And Martinez's mother testified that it was her son—not her husband—who brought Rodriguez into the house and spent the evening alone with her in his bedroom.

Our sister court rejected a name-confusion argument almost identical to Rodriguez's in *Purkey v. State.* 656 S.W.2d at 520. In that case, the defendant argued that there was insufficient evidence to identify him as the perpetrator because none of the witnesses identified him in court, "such as [by] pointing at [him] or describing his attire," and because "his legal name [was] 'James Otis Purkey, Jr.,' [so] any references . . . to a 'Jimmy Purkey' or 'Mr. Purkey' could have been references to his father or some other individual by that name." *Id.* The Beaumont Court of Appeals

---

[4]Rodriguez testified that Martinez's father was leaving the house when she arrived, but Martinez's mother testified that her husband was in the living room watching TV with her while Rodriguez was at the house.

noted that the name used to introduce Purkey to the jury—"James Otis Purkey"—was the name on the indictment and the name on the jury charge. *Id.* Although he was referenced as "Mr. Purkey," "Jimmy Purkey," "Jimmy," or "defendant" throughout the trial, he was the only person on trial for the offense, and the complainant testified "that she had known the defendant [for] many years and that he had raped her." *Id.* While the court of appeals acknowledged that "it is always a desirable practice to have a witness give an in[-]court identification of the defendant beyond a mere reference to him or her by name, . . . the Code of Criminal Procedure does not require this ritual," and "in this context, there could have been no doubt in any of the juror's minds as to whom each of the witnesses was referring . . . when using one of the stated names [or terms]." *Id.* Consequently, "the lack of a formal in[-]court identification beyond the mere reference to the defendant by name[] did not render the evidence insufficient to establish appellant's identity as the alleged criminal perpetrator." *Id.*

Similarly here, the jury was presented with only one Ricky Don Martinez. The jury was introduced to him at the start of voir dire as "Ricky Don Martinez," it heard the State read the two charges against "Ricky Don Martinez, Jr., Defendant," and it heard Martinez enter pleas to these charges. Rodriguez then confirmed for the jury that she knew "Ricky Don Martinez, Jr.," that he was in the courtroom, that he was "the Defendant," and that he was the one who had assaulted and restrained her. Although Martinez was referred to as "Mr. Martinez," "Ricky," "Ricky Martinez," and

7

"the defendant" at different points during trial, "in this context, there could have been no doubt in any of the juror's minds as to whom each of the witnesses was referring to when using one of the stated names [or terms]." *Id.* He was the only one on trial and—despite the fact that he shared a name with his father—he was the only relevant actor referred to at trial as Ricky Don Martinez, so there was no need to continuously distinguish between him and other individuals who might have shared his first name, surname, or both. *See Meeks*, 897 S.W.2d at 954–55 (holding evidence of identification sufficient despite lack of in-court identification when complainant named perpetrator as babysitter "Johnny" and complainant's parents identified babysitter as defendant).

Martinez also argues, though, that Rodriguez "does not have a strong grasp of legal terms . . . or of the English language," so although she confirmed that her assailant was "the Defendant," Martinez questions whether Rodriguez knew which person the word "Defendant" referred to.

But the entirety of Rodriguez's testimony was in English. While she admitted that she "d[id]n't know how to read [English] that well and . . . d[id]n't know how to write that well either," her testimony demonstrates that she was able to verbally communicate in English. The word "Defendant" was used verbally; Rodriguez was not asked to conduct an in-court identification by reading or writing in English. To the extent that Martinez argues "that another person, and not he, was identified by the State's witness[ through Rodriguez's use of the term "Defendant,"] . . . it was incumbent upon him, by objection to the identification procedure employed . . . , to

8

preserve the issue by making same part of the record."[5]  *Rohlfing*, 612 S.W.2d at 601.

Otherwise, Martinez's challenge to the credibility of Rodriguez's English

communication was a jury issue, and "we will not second-guess the jury's assessment

of the credibility and weight of witness testimony."  *Balderas*, 517 S.W.3d at 765–67

(overruling sufficiency challenge to identification of defendant); *see Meeks*, 897 S.W.2d

at 955 (recognizing that lack of in-court identification at trial "goes only to the weight

and credibility of the witnesses and was before the jury for their consideration"); *cf.*

---

[5]Martinez suggests, for example, that another individual could have been present at defense counsel's table, and Rodriguez could have been referring to that other individual as the defendant.  There was no record of any such presence or confusion, though, and to the extent that Martinez seeks to rely upon it, it was incumbent upon him to make it a part of the record.  *See Rohlfing*, 612 S.W.2d at 601.  Although Martinez was not required to object at trial to preserve his sufficiency complaint for appellate review, he was required to present a record that enables us to conduct that review.  *See id.* (rejecting challenge to identification when witnesses described article of clothing perpetrator was wearing at trial; noting that, "[i]f it be appellant's contention that another person, and not he[] was identified by the State's witnesses . . . it was incumbent upon him, by objection . . . or by an offer of a bill of exception . . . to preserve the issue by making same part of the record"); *cf. Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007) (noting that, although State bore burden of proof below, appellant bore "burden to bring forward a record on appeal sufficient to show that the trial court erred in [its] ruling on the motion to suppress"); *McDougal v. State*, 105 S.W.3d 119, 121 (Tex. App.—Fort Worth 2003, pet. ref'd) (recognizing in plea context that "an appellant in a criminal case must bring forth a complete record").  We will not presume the existence of a defendant's hypothetical courtroom scenario absent some indication in the record that the hypothetical scenario in fact existed.  *See Rohlfing*, 612 S.W.2d at 601 (noting that, "[a]bsent any indication . . . that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than appellant may have been identified"); *cf. Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) (op. on reh'g) (recognizing "the presumption of the regularity of the judgment of conviction and the proceedings absent a showing to the contrary").

*Jordan v. State*, 500 S.W.2d 638, 641 (Tex. Crim. App. 1973) (rejecting argument that defendant was singled out for in-court identification because he sat at defense counsel's table and stating that "the accuracy of the witnesses' identification can be tested on cross-examination, and any taint arising from a defendant's presence with his attorney can be thereby exposed").

On this record, there was thus sufficient evidence for a reasonable jury to conclude that Martinez—that is, Ricky Don Martinez Jr.—was the perpetrator of the crimes.[6] We overrule his first issue.

## B.     Jury Instruction on Offensive-Contact Assault

Martinez next contends that the trial court erred by refusing to charge the jury on offensive-contact assault because, according to him, assault by offensive contact is a lesser-included offense of assault causing bodily injury and there is some evidence that his actions amounted to the former rather than the latter.

### 1.     Standard of Review

For a defendant to be entitled to a jury instruction on a lesser-included offense, the elements of the lesser-included offense must be included within the proof

---

[6]Because Martinez contends that "identity was not established," he claims causation was not established either.  Assuming that Martinez adequately briefed this issue, our resolution of his identification challenge disposes of his causation challenge as well.  *See* Tex. R. App. P. 38.1(i), 47.1.

necessary to establish the charged offense's elements.[7] *State v. Meru*, 414 S.W.3d 159, 161–62 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007). This is a legal question that compares the elements of the offense as alleged in the information with the elements of the requested lesser offense. *Meru*, 414 S.W.3d at 162; *Hall*, 225 S.W.3d at 535.

To establish the elements of assault causing bodily injury, the State was required to prove that Martinez "intentionally, knowingly, or recklessly cause[d] bodily injury to [Rodriguez]," Tex. Penal Code Ann. § 22.01(a)(1), which the information alleged he did by "striking [her] with [his] hand on the face." Meanwhile, the elements of the requested lesser offense—assault by offensive contact—would have required the State to prove that Martinez "intentionally or knowingly cause[d] physical contact with [Rodriguez] when [he] kn[ew] or should reasonably [have] believe[d] that [she] w[ould] regard the contact as offensive or provocative." *Id.* § 22.01(a)(3).

---

[7]Even if the elements of the lesser-included offense are included within the proof necessary to establish the charged offense's elements, an instruction on the lesser-included offense is only warranted if "a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense." *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013). We do not reach the latter step of the analysis, though. *See* Tex. R. App. P. 47.1.

11

### 2. Offensive-Contact Assault Not a Lesser-Included Offense

The Court of Criminal Appeals has held that, generally, offensive-contact assault is not a lesser-included offense of bodily-injury assault. *McKithan v. State*, 324 S.W.3d 582, 591–94 (Tex. Crim. App. 2010).

In *McKithan*, one of the defendants was charged with assault causing bodily injury by kicking the complainant, and he—like Martinez—argued that offensive-contact assault was a lesser-included offense and was erroneously omitted from the jury charge. *Id.* at 591. But the Court of Criminal Appeals rejected that argument. *Id.* at 591–94. Because the State was not required to prove offensive-contact assault, "i.e., that appellant knew or should reasonably have believed that the complainant would regard this contact as offensive," to establish its charge of assault causing bodily injury, "i.e., that appellant caused the complainant bodily injury by kicking," the Court of Criminal Appeals held that offensive-contact assault was not a lesser-included offense of bodily-injury assault. *McKithan*, 324 S.W.3d at 591; *see* Tex. Penal Code Ann. §§ 22.02(a)(1), (3).

The same is true here. To prove the charged offense, the State was required to offer evidence that Martinez "intentionally, knowingly, or recklessly caused bodily injury to Mirna Rodriguez . . . by striking [her] with [his] hand on the face, causing pain." *See* Tex. Penal Code Ann. § 22.01(a)(1). The State was not required to establish that Martinez knew or reasonably should have known that Rodriguez would consider the contact offensive or provocative. *Compare id.* § 22.01(a)(1), *with id.*

12

§ 22.01(a)(3). Although Martinez argues that there was evidence Rodriguez considered the contact offensive, "[t]he relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense." *McKithan*, 324 S.W.3d at 593. Again, the State was required to prove that Martinez "cause[d] bodily injury to [Rodriguez]," Tex. Penal Code Ann. § 22.01(a)(1), so as long as Martinez's strike caused bodily injury, it was irrelevant whether the contact was offensive. *See McKithan*, 324 S.W.3d at 591.

"Because assault by contact is not established by proof of the same or less than all the facts required to establish the commission of assault causing bodily injury, assault by contact . . . is not, under the circumstances of this case, a lesser-included offense of assault causing bodily injury." *Welsh v. State*, No. 2-08-169-CR, 2009 WL 1425194, at *2 (Tex. App.—Fort Worth May 21, 2009) (per curiam) (mem. op., not designated for publication), *aff'd sub nom.*, *McKithan*, 324 S.W.3d at 591–94. We overrule Martinez's second issue.[8]

---

[8]It is unclear whether Martinez intends to argue that assault by offensive contact is a lesser-included offense of unlawful restraint as well. The State understands Martinez to be making this argument, but Martinez does not discuss the elements of unlawful restraint in his brief—at least not in the portion of his brief relevant to this issue—much less does Martinez compare the elements of unlawful restraint to those of offensive-contact assault. *See* Tex. Penal Code Ann. §§ 20.02(a), 22.01(a)(3).

Nonetheless, to the extent that Martinez intends to raise this argument, and assuming without deciding that he adequately briefed it, *see* Tex. R. App. P. 38.1(i), it is meritless. To prove unlawful restraint, the State was required to establish that

**C.** **Preservation of Michael Morton Act Objection**

In his third and final issue, Martinez argues that the trial court erred by admitting his prior judgments of conviction during the punishment phase. The State gave timely notice of its intent to use Martinez's prior convictions, *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); Tex. R. Evid. 404(b), but he claims that the Michael Morton Act required the State to produce copies of the prior judgments of conviction before trial as well, and because the State allegedly failed to provide such copies, the judgments should have been excluded. *See* Tex. Code Crim. Proc. Ann. art. 39.14. Martinez did not raise this objection at trial, though.

**1.** **Standard of Review**

To preserve a Michael Morton Act complaint for our review, a party must present the timely, specific complaint to the trial court, and the complaint on appeal must comport with the complaint made in the trial court. Tex. R. App. P. 33.1(a)(1); *see Rodriguez v. State*, 553 S.W.3d 733, 746 (Tex. App.—Amarillo 2018, no pet.) ("[T]he statutory rights created by [A]rticle 39.14[] are neither systemic or fundamental, [so] they are subject to waiver by failing to properly object to their alleged violation."); *Glover v. State*, 496 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)

---

Martinez "intentionally or knowingly restrain[ed]" Rodriguez. Tex. Penal Code Ann. § 20.02(a). The State was not required to show that Martinez "cause[d] physical contact with [Rodriguez]," nor was it required to show that he knew or should have known that she would "regard the contact as offensive or provocative." *Id.* § 22.01(a)(3).

14

(holding defendant failed to preserve Article 39.14 complaint); *see also Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").

### 2. Failure to Preserve Michael Morton Act Objection

During the punishment phase, the State offered into evidence four certified judgments of Martinez's prior convictions. Martinez objected to these exhibits, telling the trial court that he had not been provided with copies of the documents and that "the local rules require[d] their production seven days before trial." Martinez did not identify the local rule he had in mind, and—more to the point—he did not mention the Michael Morton Act at all. Because the State had given timely notice of its intent to use Martinez's extraneous offenses, *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); Tex. R. Evid. 404(b), the trial court overruled his objection under the local rules.

Martinez then reiterated his objection—again without reference to the Michael Morton Act. Moments after the trial court overruled Martinez's objection, the State asked him to stipulate to the certified judgments, and he instead reurged his objection that "[t]he local rules of this Court require the State to . . . give us these things seven days prior to trial," noting that the unidentified section of the local rules was not conditioned on a defendant's request. The trial court stood by its ruling, explaining

that it considered "notice being given by 404(b) [to be] sufficient" because the judgments were "public record[s].'"[9]

Now on appeal, Martinez complains that the trial court's admission of the four certified judgments violated the Michael Morton Act. *See* Tex. Code Crim. Proc. Ann. art. 39.14. But the Michael Morton Act is distinct from a trial court's local rules, so "the legal basis of the complaint [Martinez] raise[s] on appeal varies from the complaint [he] made at trial." *Lovill*, 319 S.W.3d at 691–92. Martinez thus forfeited his Michael Morton Act complaint by failing to bring it to the trial court's attention. *See Smith v. State*, No. 03-17-00694-CR, 2019 WL 2426595, at *11 (Tex. App.—Austin June 11, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that because "appellant failed to raise his complaint concerning the record keeping requirements of the Michael Morton Act with the trial court[,] . . . he failed to preserve these complaints"); *Rodriguez*, 553 S.W.3d at 746 (holding appellant failed to preserve alleged Article 39.14 error because he "only objected to the State's untimely request to submit [the challenged evidence] during the punishment phase based upon an alleged violation of the pretrial discovery order"); *Glover*, 496 S.W.3d at 816 (holding that "even if appellant had complied with the requirements of [A]rticle 39.14, he forfeited his complaint by failing to bring it to the attention of the trial court").

---

[9]Only later, when the State offered a different public record into evidence—a death certificate—did Martinez mention the Michael Morton Act. And in that instance, the trial court sustained the objection, and the death certificate was excluded.

16

Because Martinez did not preserve his Michael Morton Act challenge, we overrule his final issue.

### III.  Conclusion

Having overruled Martinez's three issues, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 16, 2023