**Opinion filed April 17, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00194-CR

_____

## STEVEN BEJARANO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 238th District Court
### Midland County, Texas
### Trial Court Cause No. CR56719

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Steven Bejarano, of the first-degree felony offense of continuous sexual abuse of a young child, Y.S.,[1] and assessed his punishment at sixty years' confinement. TEX. PENAL CODE ANN. § 21.02(b), (h) (West Supp. 2024). The trial court sentenced Appellant accordingly. In five issues,

---

[1]We use initials for the complainant and her family members to protect the complainant's identity.

Appellant challenges the judgment of conviction, arguing that (1) the evidence was insufficient to support the conviction because Appellant was not properly identified; (2) the trial court erred by permitting outcry witness testimony from an improper witness; (3) the trial court failed to conduct an ability-to-pay inquiry before ordering Appellant to pay court costs; (4) the trial court erred when it ordered Appellant to pay attorney's fees despite finding him to be indigent; and (5) the trial court prematurely assessed a time payment fee. We modify and affirm.

*Sufficiency of the Evidence*

A. *Relevant Background*

A grand jury indicted Appellant for continuous sexual abuse of a child younger than fourteen years of age along with four counts that alleged predicate offenses. *See id.* The matter proceeded to trial where the following evidence was adduced.

Katherine Shores worked as a forensic interviewer and coordinator for the multidisciplinary team at the Midland Rape Crisis and Children's Advocacy Center. Shores interviewed Y.S., a teenager, regarding some acts of sexual abuse that Y.S. had suffered as a young child. Y.S. identified the person who assaulted her as "Steven," a former boyfriend of her older sister. Y.S. told Shores that "Steven raped her for -- almost every day for years," beginning when she was four or five until she was six or seven. Y.S. described to Shores several incidences of sexual abuse by "Steven."

During the interview with Shores, Y.S. described "Steven" as "chubby" with a beard or mustache and tattoos of a cross, roses, skulls, and a person's name. Some of the tattoos were on his arms while others were on his back. Y.S. "guessed" the name Eric was tattooed on "Steven" "because she knew one of his children's names"; however, she was not sure. Y.S. also told Shores that "Steven" wore "big rings" on his hands and reading glasses.

2

Y.S. was born on September 22, 2005, and was a senior in high school when she testified at trial. Y.S. explained that she knew Appellant because he dated her sister, J.C., when Y.S. was six or seven years old. At trial, Y.S. described Appellant as "fat" with dark skin. Y.S. said that her sister "had a type" that had "similar looks" but confirmed that Y.S. would be "able to tell them apart." Y.S. was asked if she saw "Steven" in the courtroom in the following colloquy:

[THE STATE]:	And so if you saw Steven again, would you be able to recognize him?

[Y.S.]:	Yes.

[THE STATE]:	Do you see Steven in the courtroom?

[Y.S.]:	Yes, ma'am.

. . . .

[THE STATE]:	And so was that a yes, you see him in the courtroom?

[Y.S.]:	Yes, ma'am.

[THE STATE]:	Could you point him out and describe where he is sitting?

[Y.S.]:	Over there. He's at the corner.

THE COURT:	I can't hear you.

[Y.S.]:	At the corner.

[THE STATE]:	And there's three people at that table. Is he sitting closest to myself, in the middle?

[Y.S.]:	He's at the very end.

[THE STATE]:	At the very end closest to the window?

[Y.S.]:	Yes, ma'am.

[THE STATE]:     And how sure are you that that's the same Steven that your sister dated when you were younger?

[Y.S.]:          I'm positive.

[THE STATE]:     And is there any way you're confusing him with any of her other boyfriends?

[Y.S.]:          There's no way I can confuse him.

Y.S. testified to several incidents of sexual assault by Appellant, including incidents where Appellant forced her to give him oral sex, touched Y.S.'s vagina with his hand or hands, and made Y.S.'s vagina contact his penis. Y.S. described Appellant coming into her room "[a]lmost every night." Y.S. acknowledged that she did not previously make outcries regarding Appellant, despite prior involvement from Child Protective Services, law enforcement, and the Children's Advocacy Center.

J.C. identified Appellant in the courtroom, and she testified that she dated Appellant and that he was the only "Steven" that she dated. J.C. explained that she and Appellant dated for eight months to one year, beginning sometime in 2012. According to J.C., Appellant was clean shaven when the two dated. J.C. denied that Appellant wore "big rings on both hands" and could not recall his specific tattoos.

J.C. testified that the father of her children, Alvin, has a nephew named Eric and that Alvin had roses and skull tattoos. However, J.C. stated that their relationship ended in 2006 and that Alvin did not come visit, spend the night, or go to the family's ranch after their relationship ended.

J.V., Y.S.'s other sister, testified that her mother adopted Y.S. when Y.S. was about three years old. J.V. was familiar with Appellant through his relationship with J.C. J.V. believed J.C. and Appellant were dating around the time her son turned one in March 2014; however, she wavered on the timeline. J.V. believed that Appellant did not have any facial hair when he dated J.C. J.V. testified that Y.S. had a bad reputation for truthfulness and that she has had problems lying and stealing.

4

Paula Brookings, a nurse practitioner and sexual assault nurse examiner, performed a sexual assault exam on Y.S. in March 2021, when Y.S. was approximately fifteen years old. During the exam, Brookings gathered Y.S.'s history, which included a description of the alleged assaults and the assailant. Brookings testified that it is common in such an exam not to identify any visible injuries, because injuries that occurred years before typically heal within a couple of days after being incurred.

Midland Police Department Lieutenant Rosemary Sharp previously served as the sergeant over crimes against persons. Child Protective Services reported the alleged abuse against Y.S. to Lieutenant Sharp in March 2021. Lieutenant Sharp had Y.S. go to the police station, where she presented Y.S. with a photograph of "Steven."

Lieutenant Sharp identified "Steven" as Appellant during trial. Lieutenant Sharp described Appellant's tattoos:

> He had a tattoo of a cross on his chest, he had a tattoo of different faces on his left bicep, and then he had a Joker and a Harley Quinn on his left arm below his elbow, and then also a Tasmanian Devil, and then he had a skull and names tattooed on his body.

Photographs of those tattoos were admitted as exhibits. Although Appellant got some of the tattoos after his relationship with J.C., he acknowledged that the ones on his arms were present when they dated. However, Lieutenant Sharp noted that Appellant did not have any tattoos of roses or a tattoo on his back like Y.S. said he did.

Lieutenant Sharp explained that she did not present Y.S. with a typical photographic lineup for her to identify "Steven," but instead just a photo of Appellant. However, Lieutenant Sharp testified that was because Y.S. was already familiar with Appellant. According to Lieutenant Sharp, she was not able to identify any other "Steven" associated with the home where the alleged assaults occurred.

5

B.  *Standard of Review and Applicable Law*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).  Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence.  *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  As such, we must defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.  The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.  *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.—Fort Worth 2008, no pet.).  Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we

defer to that determination.  *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

As relevant here, a person commits continuous sexual abuse of a young child if:

> during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and . . . at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

PENAL § 21.02(b).  An "act of sexual abuse" includes the offenses of aggravated sexual assault of a child and indecency with a child by contact.  *Id.* § 21.02(c)(2), (4).  As charged in this case, a person commits aggravated sexual assault of a child if the child is younger than fourteen years of age and the person intentionally or knowingly (1) causes the penetration of the sexual organ of a child by any means, (2) causes the penetration of the mouth of a child by his sexual organ, or (3) causes the mouth of a child to contact his sexual organ or the sexual organ of another person. *See id.* § 22.021(a)(1)(B), (a)(2)(B) (West 2019).  A person commits indecency with a child by contact if the person engages in sexual contact with a child that is younger than seventeen years of age.  *Id.* § 21.11(a)(1).  As relevant to this case, a person commits this offense if, with intent to arouse or gratify the sexual desire of any person, he (1) touches any part of the genitals of a child, (2) touches any part of the body of a child with his genitals, or (3) causes a child to touch any part of his genitals. *Id.* § 21.11(a)(1), (c).

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for an offense under Chapter 21 or Section 22.021.  TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1) (West 2023); *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex.

7

App.—Eastland 2011, pet. ref'd). Similarly, a child victim's outcry alone can be sufficient to support a sexual-assault conviction. *Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.); *see also Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Identity is an essential element of any criminal offense, and the State must prove beyond a reasonable doubt that the defendant is the person who committed, or was a participant in the commission of, the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Direct, in-court identification is the preferred method to establish a person's identity as the offender. *See, e.g.*, *Hime v. State*, 998 S.W.2d 893, 896 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Where an equivocal in-court identification is corroborated by other evidence, the defendant's conviction may be affirmed. *Prihoda v. State*, 352 S.W.3d 796, 803 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.)). In such a case, the witness's uncertainty of the person's identity goes to the weight of the witness's testimony, not its admissibility. *Id.* However, identity may be proven by direct or circumstantial evidence, or by reasonable inferences from the evidence admitted at trial. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) (citing *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009)). Eyewitness testimony is not necessary. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). When a defendant contests the identity element of the offense, we are mindful that identity may be proven by direct evidence, circumstantial evidence, or even inferences. *Ingerson*, 559 S.W.3d at 509 (citing *Gardner*, 306 S.W.3d at 285); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). Although the preferred procedure is for the prosecutor to request notation in the record of an in-court identification, it is not required to sustain a jury's guilty verdict. *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel Op.] 1981).

C. *Analysis*

In Appellant's first issue, he argues that the evidence was insufficient to support his conviction because the State failed to produce legally sufficient evidence to demonstrate that he—as opposed to possible others—committed the alleged acts of sexual abuse. Appellant does not challenge any other element of the offense. Appellant primarily focuses on Y.S.'s testimony that she did not remember what the perpetrator's face looked like when he dated J.C., that J.C. had other boyfriends that matched Y.S.'s description of the perpetrator, that another boyfriend had tattoos that matched those described by Y.S., and that "the record does not establish that [Y.S.] identified [Appellant] on the record as the man who committed the acts of alleged abuse against her."

First, we note that the State did not ask that the record reflect Y.S.'s identification of Appellant as the man who sexually assaulted her. But the record does reflect that Y.S. identified her sexual assailant, that being a man in the courtroom that was sitting in a specific location. The jury was able to witness this identification and give it the weight it deemed necessary. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. Although it is the preferred method, the State was not required to request a notation that the record reflect Y.S. identified Appellant as "Steven," the man who assaulted her. *See Rohlfing*, 612 S.W.2d at 601.

Moreover, the evidence supports the jury's determination that Appellant was properly identified as the assailant, "Steven." *See Ingerson*, 559 S.W.3d at 509; *Rohlfing*, 612 S.W.2d at 601. Although there were some discrepancies, there were several similarities between Appellant's and Y.S.'s description of the man who sexually assaulted her, including specific tattoos. For example, Y.S. described tattoos with skulls and names, which appeared on Appellant's body. *See Roberson*, 16 S.W.3d at 167. When asked about confusing Appellant as "Steven" for one of

9

J.C.'s other boyfriends, Y.S. insisted that "[t]here's no way [she] can confuse him." Further, according to Y.S.'s sister, she had only dated one person named "Steven." Although Appellant posits that Y.S. could have been sexually assaulted by J.C.'s ex, Alvin, J.C. testified that Alvin did not come visit, spend the night, or go to the family's ranch after their relationship ended, which was before Y.S. was adopted. It was within the jury's purview to resolve any conflicts in Y.S.'s testimony and identification of her assailant—a resolution that we decline to disturb with the evidence before us. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We conclude that the State presented sufficient evidence from which a rational trier of fact could have logically inferred and found beyond a reasonable doubt that Appellant committed the offense. *See Ingerson*, 559 S.W.3d at 509; *Rohlfing*, 612 S.W.2d at 601. Appellant's first issue is overruled.

## *Outcry Witness*

In his second issue, Appellant argues that the trial court committed reversible error by permitting Shores to testify as the outcry witness pursuant to Article 38.072 of the Texas Code of Criminal Procedure, because Shores was not the first person to whom Y.S. disclosed the sexual assault. *See* CRIM. PROC. art. 38.072 (West Supp. 2024).

### A. *Relevant Background*

Prior to trial, the State filed a notice of intent to use certain hearsay statements made by Y.S., which identified two possible witnesses: Selene Chavez and Shores. *See id.* art. 38.072, § 2(b) (requiring pretrial notice). The notice summarized Y.S.'s statement to Chavez as: "My sister's ex-boyfriend raped me." Y.S.'s statement to Shores, however, was much more detailed, including descriptions of specific instances, time periods, and locations of various sexual assaults. The summary of Y.S.'s disclosure to Shores spanned more than two pages, single spaced.

10

The trial court heard evidence and argument as to the State's outcry witness outside the presence of the jury. The State called Shores, who described her forensic interview with Y.S. wherein Y.S. disclosed details of the sexual assaults. According to Shores, Y.S. stated that she did not go into detail with Chavez, her Child Protective Services caseworker, regarding the sexual assault.

The State argued that although Y.S. initially disclosed an assault to Chavez, Y.S. went into far more detail with Shores, thus making Shores the appropriate outcry witness. Appellant, on the other hand, argued that Shores was not the first person over the age of eighteen to whom Y.S. disclosed the sexual assault and was thus not an appropriate outcry witness. The trial court found Shores to be reliable based on time, content, and circumstances of the statement and permitted her to testify.

B. *Standard of Review and Applicable Law*

Article 38.072 of the Code of Criminal Procedure permits outcry statements by certain victims of child abuse to be admitted during trial, despite the hearsay rule, if the provisions of that article are met. *See* CRIM. PROC. art. 38.072. "The statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). "Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 only if the witnesses testify about different events," as there may be only one outcry witness per event. *Id.* A trial court has broad discretion to determine the admissibility of outcry evidence, and we will not disturb its determination as to the proper outcry witness absent a showing in the record that the trial court clearly abused its discretion. *See Garcia*, 792 S.W.2d at 92.

11

The testimony of a second outcry witness is not admissible, however, when the witness merely provides additional details regarding the same instance of sexual abuse. *See Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd) ("[B]efore more than one outcry witness may testify, it must be determined the outcry concerned different events and was not simply a repetition of the same event told to different individuals."); *Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd); *see also McDaniel v. State*, No. 10-18-00353-CR, 2020 WL 1429675, at *1 (Tex. App.—Waco Mar. 23, 2020, no pet.) (mem. op., not designated for publication).

C.  *Analysis*

Appellant argues that the trial court improperly designated Shores as the outcry witness because the State failed to demonstrate that Chavez, being the recipient of the initial outcry, was not the proper outcry witness. According to Appellant, "[he] raised enough evidence for the record to show that there is a likelihood that Chavez could be the proper outcry witness. It is the State's burden to prove that an outcry statement is admissible under [Article] 38.072, not just pick and choose which witness to call for this purpose."

Appellant relies on *Long v. State*, wherein the Texas Court of Criminal Appeals held that, as the proponent of the evidence, the State has the burden to satisfy each element of the predicate for admissibility under Article 38.072. 800 S.W.2d 545, 548 (Tex. Crim. App. 1990). Appellant does not complain about any predicate of Article 38.072 except that Shores may not have been the first person to whom Y.S. outcried.

The notice provided by the State discloses only that Y.S. told Chavez, "My sister's ex-boyfriend raped me." While we agree with Appellant that "raped" is more than a general allusion to some form of child abuse, we disagree that it contains the requisite information to describe the multiple alleged acts of offense in some

12

discernible manner. *See* CRIM. PROC. art. 38.072, § 2(a); *Lopez*, 343 S.W.3d at 140. In *Garcia*, the Court of Criminal Appeals held that it was not error for the trial court to rule that a second witness was the outcry witness where "the record [was] void as to any specific details of the statements made to [the first witness] and as to any description of the alleged offenses made to [the first witness] by the complainant." 792 S.W.2d at 91. Similarly, the record here is devoid of any specific details other than the single statement made to Chavez within the summary provided by the State, and Shores's testimony that Y.S. made some unspecified outcry to Chavez before her forensic interview. *See id.* On its face, the statement to Chavez makes no reference to repeated and factually different sexual assaults. In contrast, Y.S. provided Shores with specific details such as time, place, and manner of multiple alleged acts of sexual abuse. *See* CRIM. PROC. art. 38.072, § 2(a); *Lopez*, 343 S.W.3d at 140.

Appellant contrasts the facts in this case with those in *Hayden v. State*, wherein the record "fail[ed] to show the extent of the complainant's conversation with [the first witness]." 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Appellant contends that Y.S.'s use of the word "raped" provides sufficient detail to show that Y.S. discussed the allegations in some discernable manner. However, in *Hayden*, the child testified that she first told her school counselor of the sexual abuse, which the appellate court held was not sufficiently detailed. *See id.* Such is the case here: although Y.S. used the word "raped," there is not sufficient detail in that statement for a factfinder to understand the nature of the alleged offense, or whether it was a single incident or multiple and varied acts over time. *See id.* ("Although [the first witness] was the first person the complainant told about the sexual abuse, there is no evidence that the complainant described to her the details of the alleged abuse.") (collecting cases). *Hayden* thus supports our conclusion here. *See id.* Accordingly, we conclude that the trial court did not abuse

13

its broad discretion by allowing Shores to testify as the outcry witness. *See* CRIM. PROC. art. 38.072, § 2(a); *Garcia*, 792 S.W.2d at 92. Appellant's second issue is overruled.

*Court Costs*

A. *Relevant Background*

In its judgment of conviction, the trial court ordered Appellant pay to the State "all costs" it incurred in the prosecution. However, the trial court did not conduct a hearing, which Appellant contends was statutorily mandated, to assess Appellant's ability to pay. *See* CRIM. PROC. art. 42.15(a-1).

B. *Standard of Review and Applicable Law*

Article 42.15(a-1) reads, in pertinent part: "Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case . . . a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." *Id.* Since the parties' briefing, the Texas Court of Criminal Appeals has determined that the ability-to-pay inquiry pursuant to Article 42.15(a-1) is a *forfeitable* right. *Cruz v. State*, 698 S.W.3d 265, 268–69, 271 (Tex. Crim. App. 2024) ("[*Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)] sorted our error-preservation rules into three categories: (1) absolute requirements and prohibitions, (2) rights that must be implemented unless expressly waived, and (3) rights that are implemented upon request or else forfeited. . . . [The ability-to-pay inquiry] is a category-three right."). The *Cruz* court reasoned that because the ability-to-pay inquiry is "not fundamental to the adjudicatory process," "[r]equiring an objection to enforce it would not undermine 'the public's perception of the fairness of our judicial system' or engender 'suspicions' about the system's 'fairness and accuracy.'" *Id.* at 269, 271 (quoting *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014)). The court ultimately held that an appellant forfeits his or her right to an ability-to-pay inquiry

by not timely objecting at or near the time of sentencing to the trial court's failure to make such inquiry of the defendant on the record. *Id.* at 271; *see also Fisher v. State*, No. 05-22-00848-CR, 2024 WL 4284616, at *3 (Tex. App.—Dallas Sept. 25, 2024, no pet. h.) (mem. op., not designated for publication) (observing "the recent decision by the Texas Court of Criminal Appeals that a defendant can forfeit his right to an on-record inquiry regarding his ability to pay court costs if he does not object during or at the conclusion of the sentencing trial"); *Upson v. State*, No. 07-24-00008-CR, 2024 WL 4206809, at *3 (Tex. App.—Amarillo Sept. 16, 2024, no pet.) (mem. op., not designated for publication) ("In the present case, [a]ppellant did not object to the trial court's failure to inquire, on the record, into [a]ppellant's present ability to pay court costs. . . . As such, we must conclude that [a]ppellant failed to preserve her objection to the trial court's failure to conduct an on-the-record inquiry into her present ability to pay court costs.").

C. *Analysis*

Relying on the Fourteenth Court of Appeals opinion in *Cruz v. State*, Appellant argues that the right to a hearing on an ability to pay is a category two *Marin* right that must be affirmatively waived. 694 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2023), *aff'd*, 698 S.W.3d 265 (Tex. Crim. App. 2024). However, as noted, the Texas Court of Criminal Appeals concluded that it was a category three *Marin* right, a decision that we are bound by. *See Cruz*, 698 S.W.3d at 269; *Kendrick v. State*, No.11-23-00146-CR, 2025 WL 51819 at *2 (Tex. App.—Eastland Jan. 9, 2025, no pet.) (mem. op., not designated for publication); *see also, e.g.*, *Corley v. State*, No. 08-23-00318-CR, 2024 WL 4497982, at *9 (Tex. App.—El Paso Oct. 15, 2024, no pet.) (mem. op., not designated for publication) ("Therefore, because [a]ppellant forfeited his right to an ability-to-pay inquiry on the record by failing to request a hearing, he failed to preserve error." (citing *Cruz*, 698 S.W.3d at 271)); *Sikalasinh v. State*, No. 07-24-00018-CR, 2024 WL 4575121,

at *5 (Tex. App.—Amarillo Oct. 24, 2024, no pet.) (mem. op., not designated for publication) ("We do not reach the merits of her [ability to pay] arguments, however, because the Texas Court of Criminal Appeals recently held that 'because the [ability-to-pay] inquiry is not fundamental to the functioning of our adjudicatory system, [an appellant] forfeit[s] his complaint when he fail[s] to object in the trial court.'" (quoting *Upson*, 2024 WL 4206809, at *2)).

It is undisputed that Appellant did not request an ability-to-pay inquiry or object to the lack of an inquiry on the record. Consequently, Appellant has forfeited his complaint on appeal. *See Cruz*, 698 S.W.3d at 271; *see also Washington v. State*, No. 13-24-00034-CR, 2024 WL 4707820, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 7, 2024, no pet.) (mem. op., not designated for publication) ("[The appellant] did not object below to the trial court's failure to conduct an ability-to-pay inquiry prior to its assessment of these costs. Accordingly, he has forfeited his right to complaint on appeal of the court's failure to conduct this inquiry."). We overrule Appellant's third issue.

*Attorney's Fees and Time Payment Fee*

In his fourth and fifth issues, Appellant argues that the trial court erred by ordering him to pay court-appointed attorney's fees and a time payment fee, respectively, despite previously finding him indigent. The State agrees with Appellant.

"[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." CRIM. PROC. art. 26.04(p). A trial court may assess court-appointed attorney's fees against a

16

defendant, but only "[i]f the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided." *Id.* art. 26.05(g). Absent a determination by the trial court that a defendant is able to repay the costs of court-appointed legal counsel, "there [is] no factual basis in the record to support a determination that Appellant [can] pay the fees." *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013). Without a factual basis supporting the order, we must reform the judgment to delete the order to repay court-appointed attorney costs. *See id.* at 252.

As for the time payment fee, the Texas Court of Criminal Appeals recently held that:

> [t]he pendency of an appeal stops the clock for purposes of the time payment fee. Consequently, the assessment of the time payment fees in Appellant's case is premature, and the fees should be struck in their entirety, without prejudice to them being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes.

*Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021).

Because Appellant was initially determined to be indigent and nothing in the record supports the trial court's implicit determination that he subsequently had the financial resources to pay, we sustain Appellant's fourth issue. *See Cates*, 402 S.W.3d at 252. Because Appellant appealed the trial court's judgment, the clock on Appellant's duty to pay the time payment fee was stopped—thus, we sustain Appellant's fifth issue. *See Dulin*, 620 S.W.3d at 133. Accordingly, we modify (1) the trial court's judgment to clarify that "all court costs, fines, fees, [and] assessments" does not include court-appointed attorney's fees, and (2) the district clerk's amended bill of costs to delete the time payment fee, without prejudice to such a fee being assessed at a later date, and the court appointed attorney's fees previously assessed against Appellant. *See id.*; *Cates*, 402 S.W.3d at 252.

17

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.


                                        W. BRUCE WILLIAMS

                                        JUSTICE


April 17, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.